1  DURIE TANGRI LLP
   RAGESH K. TANGRI (SBN 159477)
2  rtangri@durietangri.com
   JOSEPH C. GRATZ (SBN 240676)
3  jgratz@durietangri.com
   217 Leidesdorff Street
4  San Francisco, CA  94111
   Telephone:    415-362-6666
5  Facsimile:    415-236-6300

6  Attorneys for Defendant
   FACEBOOK, INC.

7

8                IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         OAKLAND DIVISION

11 RAYMOND LONG, M.D., and              Case No. 4:17-cv-02758-PJH
   BANDHA YOGA PUBLICATIONS, LLC,
12                                      **DEFENDANT FACEBOOK'S REPLY IN**
                                        **SUPPORT OF ITS NOTICE OF MOTION**
               Plaintiffs,              **AND MOTION TO DISMISS**
13
                                        Date:   February 13, 2019
14                                      Time:   9:00 a.m.
          v.                            Ctrm:   3 – 3rd Floor
15                                      Judge:  Honorable Phyllis J. Hamilton
   TAMMY DORSET; JOHN DOE 1-10; and
16 FACEBOOK, INC.,

17              Defendants.

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.      INTRODUCTION .................................................................................................1

II.     ARGUMENT .......................................................................................................1

        A.      Plaintiff fails to respond to Facebook's argument that Dr. Long's notices were deficient under Sections 512(b) and (d); therefore, Facebook is entitled to those safe harbors. ..................................................................................1

        B.      Plaintiff's notices also did not satisfy the requirements of Section 512(c)..........................2

                1.      Plaintiff's attempts to distinguish binding Ninth Circuit case law fail. ..................3

                2.      Plaintiff fails to identify a single case supporting his position on expeditious removal. ..................................................5

        C.      Plaintiff does not adequately address the pleading deficiencies in his copyright claims. .......................................................................................6

                1.      Plaintiff cannot rely on inaction by Facebook to establish direct infringement..................................................6

                2.      Plaintiff never alleged that Facebook received a financial benefit from the Dorset's actions...................................................7

                3.      Plaintiff cannot overcome the pleading deficiencies in his contributory infringement claim. ............................................8

                        a.      Because the DMCA notices were statutorily deficient, they could not, as a matter of law, impart knowledge to Facebook. ...........................8

                        b.      Plaintiff fails to allege facts showing that Facebook materially contributed to the infringement...................................9

        D.      None of plaintiff's state law claims are adequately pleaded............................10

                1.      Facebook's third-party-liability disclaimer is valid and applicable....................10

                2.      Plaintiff ignores binding Ninth Circuit precedent and fundamentally misunderstands section 230 of the CDA................................11

                3.      Plaintiff pleads only inaction on the part of Facebook, and inaction is insufficient to support an aiding and abetting claim................................12

                4.      Plaintiff fails to identify a promise in Facebook's Terms of Service which was not kept. ...................................................13

                5.      Plaintiff fails to address the economic loss rule and cites only cases in which the court dismissed negligence claims. ........................................14

                6.      Only restitution is available under the UCL, not compensatory damages............15

III.    CONCLUSION....................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alfus v. Pyramid Tech. Corp.*,
745 F. Supp. 1511 (N.D. Cal. 1990) ...................................................................12

*Barnes v. Yahoo!*,
570 F.3d 1096 (9th Cir. 2009) .......................................................................1, 11

*Bassam v. Bank of Am.*,
No. CV 15-00587 MMM, 2015 WL 12697873 (C.D. Cal. Nov. 3, 2015) .........................14

*Batzel v. Smith*,
333 F.3d 1018 (9th Cir. 2003) ...................................................................12

*Caraccioli v. Facebook, Inc.*,
167 F. Supp. 3d 1056 (N.D. Cal. 2016) ...................................................................10

*Caraccioli v. Facebook, Inc.*,
700 F. App'x 588 (9th Cir. 2017) ...............................................................10, 12

*Casey v. U.S. Bank Nat'l Ass'n*,
127 Cal. App. 4th 1138 (2005) ...................................................................12

*Davidson v. City of Westminster*,
32 Cal. 3d 197 (1982) ...................................................................13

*Davis. v. Mason Cty.*,
927 F.2d 1473 (9th Cir. 1991) .......................................................................7

*Dep't of Fair Employment and Housing v. Lucent Tech., Inc.*,
No. C 07-3747 PJH, 2008 WL 5157710 (N.D. Cal. Dec. 8, 2008) ...................................15

*Derusseau v. Bank of Am., N.A.*,
No. 11 CV 1766 MMA (JMA), 2011 WL 5975821 (S.D. Cal. Nov. 29, 2011) ..................................14

*Diaz v. Intuit, Inc.*,
No. 5:15-cv-01778-EJD, 2018 WL 2215790 (N.D. Cal. May 15, 2018) ...........................................12

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
521 F.3d 1157 (9th Cir. 2008) ...............................................................11, 12

*Fiol v. Doellstedt*,
50 Cal. App. 4th 1318 (1996) ...................................................................13

*Fox Broad. Co., Inc. v. Dish Network, L.L.C.*,
747 F.3d 1060 (9th Cir. 2014) .......................................................................7

*Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*,
   572 U.S. 559 (2014) ................................................................................................................3

*In re Apple Computer Sec. Litig.*,
   886 F.2d 1109 (9th Cir. 1989) ...............................................................................................7

*In re Sony Gaming Networks and Customer Data Security Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014) ..................................................................................14

*Juntilla v. Aurora Loan Servs., LLC*,
   No. CV 11-08201 DDP, 2013 WL 1303820 (C.D. Cal. Mar. 28, 2013) ...............................14

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
   315 F. App'x 603 (9th Cir. 2008) .........................................................................................14

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ........................................................................................................15

*Linder v. Golden Gate Bridge, Highway & Transportation Dist.*,
   No. 4:14-CV-03861 SC, 2015 WL 4623710 (N.D. Cal. Aug. 3, 2015) ..................................2

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ..............................................................................................................15

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ...........................................................................................7, 8

*Morrow v. Balaski*,
   719 F.3d 160 (3d Cir. 2013) ...................................................................................................7

*Nat'l Photo Grp., LLC v. Allvoices, Inc.*,
   NO. C-13-03627 JSC, 2014 WL 280391 (N.D. Cal. Jan. 24, 2014) .......................................9

*Nevada Power Co. v. Monsanto Co.*,
   955 F.2d 1304 (9th Cir. 1992) ...............................................................................................7

*Perfect 10, Inc. v. Amazon, Inc.*,
   508 F.3d 1146 (9th Cir. 2007) ...............................................................................................9

*Perfect 10, Inc. v. CCBill LLC*,
   488 F.3d 1102 (9th Cir. 2007) .......................................................................................1, 4, 8

*Perfect 10, Inc. v. Giganews, Inc.*,
   847 F.3d 657 (9th Cir. 2017) ...........................................................................................3, 6, 7

*Perfect 10, Inc. v. Google, Inc.*,
   No. CV 04-9484 AHM, 2010 WL 9479059 (C.D. Cal. July 26, 2010).......................1, 4, 5, 6

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007) ...........................................................................................8, 9

*Perfect 10, Inc. v. Yandex N.V.*,
   2013 U.S. LEXIS 65802 (N.D. Cal. May 7, 2013) ........................................................... 4

*Pierce v. Underwood*,
   487 U.S. 552 (1988) ........................................................................................................... 3

*Religious Tech. Ctr. v. Netcom On-Line Commc'n Servs., Inc.*,
   907 F. Supp. 1361 (N.D. Cal. 1995) ................................................................................. 8

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
   34 Cal. 4th 979 (2004) ..................................................................................................... 14

*Schneider v. Cal. Dept. of Corrections*,
   151 F.3d 1194 (9th Cir. 1998) ....................................................................................... 4, 9

*Shropshire v. Canning*,
   No. 10-CV-01941-LHK, 2011 WL 90136 (N.D. Cal. Jan. 11, 2011) ............................... 6

*Ventura Content, Ltd. v. Motherless, Inc.*,
   885 F.3d 597 (9th Cir. 2018) ............................................................................................. 3

**Statutes**

17 U.S.C. § 512 ....................................................................................................................... 1, 2

**Other Authorities**

S. Rep. No. 105-190, at 44 (1998) .............................................................................................. 6

## I.    INTRODUCTION

In its opening brief, Facebook argued that the Section 512(b) and 512(d) safe harbors, relating to cached images from other sites and to links, disposed of the copyright claims in this case.  In his opposition brief, Dr. Long does not address this argument at all.  And where he does respond to Facebook's other arguments, Dr. Long's assertions are at odds with binding Ninth Circuit precedent.  The copyright claims should be dismissed.

As to the state-law claims, *Barnes v. Yahoo!*—a binding Ninth Circuit case—confirms that Section 230 bars those claims, which all boil down to the assertion that Facebook should have acted differently in removing third-party content.  Those claims are in the heartland of Section 230 immunity.  And as to the contract claim, Dr. Long has not plausibly alleged that Facebook breached any promise it made.

This case never should have been filed, and should not occupy any more of this Court's time and resources.  The first amended complaint ("FAC") should be dismissed with prejudice.

## II.    ARGUMENT

### A.    Plaintiff fails to respond to Facebook's argument that Dr. Long's notices were deficient under Sections 512(b) and (d); therefore, Facebook is entitled to those safe harbors.

As explained in the opening brief, a fatal flaw with Dr. Long's copyright claims is his failure to send proper DMCA notices.  As the Ninth Circuit held more than a decade ago, when a copyright owner does not "provide effective notice, knowledge of infringement may not be imputed . . . based on [the copyright owner's] communications."  *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1113 (9th Cir. 2007) ("*CCBill*").  Indeed, a defendant is "not required to act to remove any entry that did not meet the DMCA requirements."  *Perfect 10, Inc. v. Google, Inc.*, No. CV 04-9484 AHM, 2010 WL 9479059, at *8 (C.D. Cal. July 26, 2010) ("*Google*").

As the FAC acknowledges, the allegedly infringing material appeared on Facebook in the form of *links*—not in the form of images directly uploaded to Facebook.  FAC ¶ 47.  In order to overcome the Section 512(d) safe harbor, which covers allegedly infringing links, Dr. Long would have needed to send a notice meeting the requirements of Section 512(d)(3) (such as identifying a specific "reference or link" to remove).  He did not do so, and neither alleges in the FAC nor argues in his opposition brief that he

did.

And as to allegedly infringing material automatically retrieved and cached from another website (as the images accompanying the links were), in order to overcome the Section 512(b) safe harbor, Dr. Long would have needed to send a notice meeting the requirements of Section 512(b)(2)(E).  Again, he did not do so, and neither alleges in the FAC nor argues in his opposition brief that he did.  Instead, he sent a notice that did not include the information required by Section 512(d) (such as identification of a specific link to remove) and did not include the information required by Section 512(b) (such as confirmation that the image in question had already been removed, or ordered removed, from the website from which they were cached).  Indeed, the notice he sent specifically stated that it was being sent under Section 512(c)—rather than 512(d) or 512(b).  Because Dr. Long's copyright-infringement claim rests entirely on allegations of infringing links and infringing cached images, his failure to send a notice complying with Sections 512(d) and 512(b) dooms that claim in its entirety.

**B.      Plaintiff's notices also did not satisfy the requirements of Section 512(c).**

As discussed above, Facebook enjoys the independent safe harbors provided by Sections 512(b) and 512(d) of the Copyright Act—and that is true regardless whether it also enjoys the safe harbor provided by Section 512(c).  The court need not look beyond Facebook's Section 512(b) and 512(d) arguments—to which Dr. Long does not respond—to dispose of Dr. Long's copyright claims.  Because Dr. Long "does not address this point at all in his opposition brief," this Court "need not address the issue."  *Linder v. Golden Gate Bridge, Highway & Transportation Dist.*, No. 4:14-CV-03861 SC, 2015 WL 4623710, at *3 (N.D. Cal. Aug. 3, 2015).

But to the extent the Court wishes to exercise its discretion to consider them, Dr. Long's arguments about Section 512(c) are unavailing.  Assuming for the sake of argument, as in the opening brief, that any of the infringing material identified by Dr. Long on the Bandha Yoga page was stored on Facebook at the direction of a user, his notices did not satisfy the requirements of Section 512(c).

As explained below, the notices failed to provide Facebook with the information necessary to take down the infringing material:  namely, direct URLs to the posts containing the allegedly infringing links and a single document providing both the links to the infringed material and the infringing material so that a "significant burden" was not shifted from Dr. Long to Facebook.  Dr. Long also fails to adequately

1   allege that Facebook did not act expeditiously to remove the infringing content.

2           **1.**        **Plaintiff's attempts to distinguish binding Ninth Circuit case law fail.**

3   Dr. Long attempts to distinguish *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017)

4   ("*Giganews*") and *Ventura Content, Ltd. v. Motherless, Inc.*, 885 F.3d 597 (9th Cir. 2018) ("*Motherless*")

5   on the grounds that both cases involved a high volume of material, whereas this case involved a small

6   volume of material, but he fundamentally misreads the facts of those cases.

7   First, he argues that in *Giganews*, the court found that the defendant would need several hundred

8   thousand work hours to process the takedown notices it receives each month, which he compares to the

9   dozens of files identified in his own takedown notices.  Pl.'s Opp. to Facebook's Motion to Dimiss

10   ("Opp.") at 10:16-22 (ECF No. 42).  What Dr. Long fails to understand is that this estimate in *Giganews*

11   referred to the time it would take the defendant to process ***every*** takedown notice it received from ***every***

12   complaining party in a typical month, if all the notices were as deficient as the ones sent by that plaintiff.

13   847 F.3d at 671.  In fact, the defendant spent only 20 hours responding to plaintiff's specific takedown

14   notices, not hundreds of thousands of hours.  *Id.*  Nonetheless, the Ninth Circuit held that these notices

15   were insufficient[1] because they were not machine-readable.[2]  *Id.*

16   Similarly, Dr. Long attempts to distinguish *Motherless* on the basis that there were more than half

17   a million pieces of non-infringing content on that defendant's website.  Opp. at 10:5-8 (citing *Motherless*,

18   885 F.3d at 612).  But that was across the entire website.  Facebook, "one of the largest social networking

19   sites in the world," FAC ¶ 10, which is alleged by Plaintiff to have "more than 1 billion individual and

20   business users [who] create pages, upload, download, distribute, and buy and sell a variety of audiovisual

21   works," *id.*, has much more content than half a million pieces of non-infringing content on its website.

---

[1] The *Giganews* opinion did not reach the DMCA because it found that the notices were not sufficient to give rise to any underlying contributory liability to which the service provider could need a DMCA safe harbor.  But because those notices were insufficient to give rise to liability in the first place, *a fortiori* they would not have been sufficient to take away a safe harbor from that liability under the DMCA.

[2] Dr. Long argues that the Ninth Circuit decided this as a question of fact, not law.  This is belied by the standard of review which the court applied: *de novo*, which is the standard for questions of law. *Giganews*, 847 F.3d at 671; *see Highmark Inc. v. Allcare Health Mgmt. Sys., Inc.*, 572 U.S. 559, 563 (2014) ("Traditionally, decisions on 'questions of law' are 'reviewable *de novo*,' decisions on 'questions of fact' are 'reviewable for clear error,' and decisions on 'matters of discretion' are 'reviewable for abuse of discretion.'") (quoting *Pierce v. Underwood*, 487 U.S. 552, 558 (1988)).

To the extent Dr. Long is arguing that *Motherless* only applies to websites that contain a great deal of non-infringing content, Facebook is such a website.

Next, Dr. Long claims that his notices are adequate because they "stated that all uploads to the Bandha Yoga page made on or after May 24, 2015 infringed on his copyrights." Opp. at 11:6-7. This is simply at odds with the allegations contained in the FAC and the documents in the record on this Motion. None of these notices state that "all" the posts are infringing, nor do they specify that May 24, 2015 is the start date for the period on which he claims infringement. *See* Def.'s Exs. 1-3 (ECF Nos. 35-1, 35-2 and 35-3). Dr. Long's assertion in his brief cannot be used to supplement the deficient allegations of the complaint. *Schneider v. Cal. Dept. of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

Dr. Long cites an unpublished district court case for the proposition that "[a] DMCA notice may even be adequate where it requires a service provider 'take substantial time to piece together the relevant information for each instance of claimed infringement.'" Opp. at 11:1-5 (quoting *Perfect 10, Inc. v. Yandex N.V.*, 2013 U.S. LEXIS 65802, at *10 (N.D. Cal. May 7, 2013)). In fact, the full quotation is "[a] DMCA notice may **not** be adequate if it requires that a service provider take substantial time to piece together the relevant information for each instance of claimed infringement." *Id.* (quoting *CCBill*, 488 F.3d at 1112-13) (emphasis added). Taken charitably, Dr. Long may be arguing that if a notice "may not" be adequate, it "may" be adequate too. But to the extent that Dr. Long wishes to read this sentence as a holding that a notice may be adequate even if it requires a defendant to piece together information from multiple separate documents, this interpretation would put the district-court opinion in *Yandex* in direct conflict with the Ninth Circuit's holding in *CCBill* that notices are inadequate when they require the service provider to "cobble together adequate notice" from multiple sources. *CCBill*, 488 F.3d at 1112.

Dr. Long's treatment of *Perfect 10, Inc. v. Google Inc*, 2010 WL 9479059 (C.D. Cal. July 26, 2010) illustrates his fundamental misunderstanding of what makes a notice adequate under the DMCA. In *Google*, the court held that some notices were adequate, and others were not. *Google*, 2010 WL 9479059, at *8-10, *14. The "Group B" notices, some of which were found to be adequate, contained

spreadsheets with three columns:  the first listing infringing URLs, the second listing search terms to find the URL, and the third listing the location of the copyrighted work at issue within the plaintiff's website or magazine.[3]  *Id.* at *8-9.

The inadequate notices, labelled as Group C notices:

> much like the notices described in *CCBill*, require[d] the service provider to move back and forth between several different files in order to determine that a given URL was infringing. . . . Where P10 provided spreadsheets, the spreadsheets d[id] not identify the infringing URL, but merely the top-level URL for the entire website. . . . Unlike certain of the Group B notices that contain all of the statutorily required information in a single spreadsheet, ***no single document*** in any of the Group C notices contain[ed] all of the information required in a valid DMCA notice.

*Google*, 2010 WL 9479059 at *10-11 (emphasis added).

Here, the notices sent by Dr. Long, which split the links to the infringed material and the images of the infringing links into separate documents, are akin to the deficient Group C notices, not the compliant Group B notices.  Dr. Long argues that his notices are "more clear" than the Group B notices because they did not require reference to a spreadsheet.  But the spreadsheet was the material feature that made the Group B notices in *Google* adequate because it contained *all* the required information in one location, with the infringed and infringing material correlated by row, and did not require the ISP to move back and forth between multiple documents to piece together which infringing material corresponded to which infringed material.  *Id.* at *9.  And Dr. Long failed to provide the requisite specific URLs; instead, like the deficient Group C notices in *Google*, he provided only a "top-level URL" for his page.  This is inadequate under the DMCA.

### 2.   Plaintiff fails to identify a single case supporting his position on expeditious removal.

Dr. Long alleges that Facebook took five business days to remove the content at issue.  FAC ¶ 38 (the hacking occurred "on or about May 24, 2015," a Sunday); Ex. 4 at 2 (email from Dr. Long dated Monday, June 1, 2015, thanking Facebook for restoring his control of the Bandha Yoga page).  Removal within that time frame was expeditious, and Dr. Long has not identified a single case in which such rapid removal was not regarded as expeditious.  Instead, he relies on legislative history that states there is no

---

[3] The "Group B" notices that did not meet this decription—in particular those that did not list particular infringing URLs—did "not confer adequate notice under the DMCA."  *Id.* at *8-9.

1    "uniform time limit for expeditious action."  S. Rep. No. 105-190, at 44 (1998).  But Facebook is not

2    arguing for this Court to adopt a uniform limit, nor does the Court need to do so to decide this matter.

3    Dr. Long has failed to provide any authority that five business days is not expeditious under these

4    circumstances, and Facebook has provided authority showing that it is.

5         In particular, *Google* shows that "processing the majority of the notices within one-to-two weeks

6    of receipt" would constitute expeditious removal.  *Google*, 2010 WL 9479059, at *9.  There, the

7    defendant claimed it processed the notices within "one-to-two weeks of receipt," whereas plaintiff

8    claimed it took "four to seventeen months."  *Id.*  The court held this created an issue of material fact.  *Id.*

9    This outcome is only possible if one-to-two weeks constituted expeditious removal.  Otherwise, plaintiff

10   would have been entitled to summary judgment on that point; if one-to-two weeks was not expeditious,

11   there would be no need for the jury to decide whether the removal had taken weeks, as alleged by

12   defendant, or months, as alleged by plaintiff.  *Google*, 2010 WL 9479059, at *9.  And while Facebook

13   agrees with Dr. Long that the court in *Shropshire* did not make an affirmative holding regarding

14   expeditious removal, its conclusion that YouTube "complied" with the takedown notice by acting ten

15   days[4] later suggests as much, because compliance is impossible without expeditious removal.[5]

16   *Shropshire v. Canning*, No. 10-CV-01941-LHK, 2011 WL 90136, at *5 (N.D. Cal. Jan. 11, 2011).

17   Because Facebook removed the material within five business days, Facebook removed the material

18   expeditiously.

19         **C.    Plaintiff does not adequately address the pleading deficiencies in his copyright claims.**

20

21              **1.    Plaintiff cannot rely on inaction by Facebook to establish direct infringement.**

22         Dr. Long acknowledges that under binding Ninth Circuit law, "[the distinction between] active

23   and passive participation remains a central part of the analysis of the alleged infringement."  Opp. at

24   15:3-4 (quoting *Giganews*, 847 F.3d at 667).  Indeed, direct infringement is not possible without

25

26   [4] Dr. Long stresses the importance that this period in *Shropshire* contained a federal holiday, Opp. at 14:12-13, but the period in Dr. Long's case did as well: Memorial Day, which fell on May 25, 2015.

27   [5] As Dr. Long points out, the court describes the timeline of the case inconsistently in different parts of the decision, but it used the ten-day figure in drawing its conclusion about compliance.  *See Shropshire*,

28   2011 WL 90136, at *2, *5.

1   volitional conduct by the defendant.  *Giganews*, 847 F.3d at 666; *see also Fox Broad. Co., Inc. v. Dish*

2   *Network, L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014) ("Infringement of the reproduction right requires

3   'copying *by* the defendant,' which comprises a requirement that the defendant cause the copying.")

4   (citation omitted).

5        Despite recognizing the "central" distinction between active and passive conduct, Dr. Long

6   argues that Facebook should be liable based exclusively on its "failure to act timely."  Opp. at 15:8.

7   "However, merely restating the Defendants' inaction as affirmative failure to act does not alter the

8   passive nature of the alleged conduct."  *Morrow v. Balaski*, 719 F.3d 160, 178-79 (3d Cir. 2013)

9   (addressing active versus passive conduct generally).  Dr. Long admits that "[i]t is uncontested that

10  Facebook did not initially upload the infringing content."  Opp. at 15:7-8.  In other words, Facebook did

11  not cause the alleged infringement to occur.  Facebook's failure to act cannot be recast as active

12  participation in the infringement.

13       Dr. Long's three cited authorities all involved non-copyright torts that impose a duty to act.  *See*

14  *Nevada Power Co. v. Monsanto Co.*, 955 F.2d 1304 (9th Cir. 1992) ("failure to warn"); *Davis. v. Mason*

15  *Cty.*, 927 F.2d 1473 (9th Cir. 1991) ("failure to train"); *In re Apple Computer Sec. Litig.*, 886 F.2d 1109

16  (9th Cir. 1989) ("failure to disclose material risks").  The fact that "[a]s a general matter," Opp. at 9,

17  some *other* areas of law impose liability for failure to act does not change the express requirement of

18  direct infringement that the defendant must themselves do an act falling within the exclusive rights of the

19  copyright holder.  Because Dr. Long has established no volitional conduct on the part of Facebook, his

20  direct infringement claim must be dismissed.

21              **2.    Plaintiff never alleged that Facebook received a financial benefit from the
                        Dorset's actions.**

22

23       Dr. Long admits that, in order to state a claim for vicarious copyright infringement, he must

24  allege that Facebook had a "direct financial interest" in the infringement.  Opp. at 15:20-21 (quoting

25  *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1071 (9th Cir. 2013)).  The FAC simply does not

26  contain such an allegation.  The FAC pleads only that the ***Dorset defendants*** drew a financial benefit—

27  not Facebook.  FAC ¶ 122.  Dr. Long relies on the general allegation that his Facebook page has a certain

28  number of followers and hopes that the Court will draw its own inference that Facebook therefore

1    received a financial benefit from the Dorset posts.  Opp. at 16:12-20.  But he never actually alleged the

2    necessary element that Facebook drew this benefit.  FAC ¶ 122.  "[P]laintiffs' failure to allege a

3    financial benefit is fatal to their claim for vicarious liability."  *Religious Tech. Ctr. v. Netcom On-Line*

4    *Commc'n Servs., Inc.*, 907 F. Supp. 1361, 1382 (N.D. Cal. 1995).

5              **3.    Plaintiff cannot overcome the pleading deficiencies in his contributory**
                       **infringement claim.**

6

7         Dr. Long's contributory infringement claim must be dismissed for two independent reasons:  His

8    DMCA notices failed to adequately impart knowledge of infringement to Facebook, and he failed to

9    adequately plead that Facebook materially contributed to the infringement.

10             **a.    Because the DMCA notices were statutorily deficient, they could not,**
                       **as a matter of law, impart knowledge to Facebook.**

11

12        In order to plead a claim for contributory infringement, Dr. Long concedes that he must allege

13   that Facebook had knowledge of the alleged infringement.  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494

14   F.3d 788, 795 (9th Cir. 2007) ("*Visa*").  According to Dr. Long, this knowledge came from Dr. Long's

15   DMCA notices.  *See* Opp. at 17:8 ("Dr. Long's notices provided Facebook with notice of the infringing

16   material.").  But as explained in Facebook's opening brief, these notices were statutorily deficient

17   because they did not comply with the applicable safe harbors.  Because the Ninth Circuit has held that a

18   defective DMCA notice cannot impute knowledge of infringement for purposes of a contributory-

19   infringement claim, these notices cannot form the basis for an allegation of contributory infringement.

20   *See CCBill*, 488 F.3d at 1113 (holding that when a copyright owner "d[oes] not provide effective notice,

21   knowledge of infringement may not be imputed" to the ISP "based on" those communications); *Luvdarts*,

22   710 F.3d at 1072 (dismissing contributory infringement claim because DMCA notices were insufficient

23   to establish actual knowledge of infringement).

24        Facebook made this argument in its opening brief, and Dr. Long's opposition fails to address it or

25   to distinguish *CCBill or Luvdarts*.  Instead, it doubles down on his contention that his "notices provided

26   Facebook with notice of the infringing activity." Opp. at 17:8.  But the Ninth Circuit's holdings in *CCBill*

27   and *Luvdarts* confirm they did not.  Dr. Long's contributory infringement claim must be dismissed.

28

1

               **b.**    **Plaintiff fails to allege facts showing that Facebook materially**
2
                          **contributed to the infringement.**

3         Dr. Long cannot allege contributory infringement without alleging "facts showing that

4  [Facebook] induce[s], cause[s], or materially contribute[s] to the infringing conduct." *Visa*, 494 F.3d at

5  796.  Dr. Long argues that *Perfect 10, Inc. v. Amazon, Inc.*, 508 F.3d 1146 (9th Cir. 2007) is analogous

6  because, in that case, "there [wa]s no dispute that Google substantially assists websites to distribute their

7  infringing copies to a worldwide market and assists a worldwide audience of users to access infringing

8  material."  508 F.3d at 1172.  Dr. Long asserts for the first time in his opposition that Facebook

9  "similarly distributed, promoted, and made available the infringing material at issue here."  Opp. at

10  18:11-12.  This is at odds with the FAC, which alleges, to the contrary, that Facebook is liable not for its

11  actions, but for its failure to act to prevent alleged third-party infringement. *See, e.g.*, FAC ¶ 64.  He

12  cannot use his opposition brief to rewrite his complaint. *Schneider*, 151 F.3d at 1197 n.1 (holding "[i]n

13  determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint to a

14  plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.").

15         Dr. Long next claims that he does not have the burden to plead "simple measures" that Facebook

16  should have taken.  Opp. at 18:13-16.  This is simply wrong. *See, e.g.*, *Nat'l Photo Grp., LLC v.*

17  *Allvoices, Inc.*, NO. C-13-03627 JSC, 2014 WL 280391, at *7 (N.D. Cal. Jan. 24, 2014) (granting motion

18  to dismiss, in part, because "Plaintiff fail[ed] to allege what 'simple measures' Defendant failed to take to

19  prevent further damage to the copyrighted photographs.").  He now claims that Facebook should have

20  "shut down, permanently or temporarily, an easily identifiable hijacked account."  Opp. at 18:17-18.  But

21  this contradicts his repeated assertions that Facebook should not have attempted to address that issue.

22  *See* FAC ¶ 68 ("Facebook's automated responder . . . forwarded his message to their page administration

23  team.  Facebook's automated responder therefore ***miscategorized*** Dr. Long's copyright issue as a page

24  administration issue.") (emphasis added); ¶ 81 ("Facebook still ***erroneously believed*** that Dr. Long was

25  attempting to make a page administration claim") (emphasis added).  Dr. Long complains that Facebook

26  treated his issue as a page administration dispute rather than a copyright dispute and, in the same breath,

27  complains that Facebook did not undertake the "simple measure" of treating his issue as a page

28  administration dispute.  Three years after the fact, Dr. Long still cannot decide whether Facebook was

1  right or wrong in attempting to resolve the page administration claim prior to the intellectual property

2  claim.  Given his own indecisiveness on the matter, he cannot credibly assert that this was a "simple

3  measure" that Facebook failed to take.  And, of course, it was a measure that Facebook did take, when it

4  removed Tammy Dorset from the page and restored his access. FAC ¶ 86 ("Facebook removed Tammy

5  Dorset as the administrator of the Bandha Yoga page, and removed all posts by Tammy Dorset.").

6      Because Dr. Long has failed to adequately allege that Facebook materially contributed to the

7  infringement, his contributory infringement claims must be dismissed.

8      **D.    None of plaintiff's state law claims are adequately pleaded.**

9           **1.    Facebook's third-party-liability disclaimer is valid and applicable.**

10     Facebook's Terms of Service contains a valid waiver of liability for the acts of third parties on the

11 platform, which Dr. Long himself incorporated into the FAC.  FAC Ex. 1 at § 4 ¶ 3 ("We do not control

12 or direct what people and others do or say, and we are not responsible for their actions or conduct . . . or

13 any content they share (including . . . unlawful . . . content").  Dr. Long acknowledges this waiver has

14 previously been relied upon by the Ninth Circuit in dismissing similar claims.  Opp. at 19:4-7 (citing

15 *Caraccioli v. Facebook, Inc.*, 700 F. App'x 588 (9th Cir. 2017)).  He attempts to distinguish *Caraccioli*

16 on the basis that it involved Facebook's failure to remove content posted on its website by third parties,

17 whereas he seeks to hold Facebook accountable for its "own" wrongdoing.

18     But the wrongdoing he cites ultimately consists of the alleged failure to remove content posted on

19 its website by third parties—just like *Caraccioli*.  The plaintiff there also attempted to frame Facebook's

20 alleged misconduct as Facebook's own affirmative wrongdoing.  Yet as the district court explained:

21         [T]he court does not presume the truth of the allegation that Facebook somehow
           became the publisher of content on the suspect account when Facebook purportedly
22         ***reviewed it and then did not terminate it.***  This is because Plaintiff, by relying the
           January 30th Terms of Service in the operative version of the complaint, cannot
23         contradict the provision clarifying that Facebook is not responsible for content
           shared by other users, including any content that is "offensive, inappropriate,
24         obscene, unlawful or otherwise objectionable."  Plaintiff ***must accept the Terms of
           Service*** he incorporated into his pleading as a whole, not just those provisions that
25         benefit his cause.

26 *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1063 (N.D. Cal. 2016) (emphasis added).  The Ninth

27 Circuit affirmed.  *Caraccioli*, 700 F. App'x at 590.

28     So it is here.  Because Dr. Long accepted the third-party waiver when he agreed to the Terms of

Service, and because his claims arise from the conduct of third parties, namely the Dorset defendants, his state law claims must be dismissed.

> **2.    Plaintiff ignores binding Ninth Circuit precedent and fundamentally misunderstands section 230 of the CDA.**

As Facebook explained in its opening brief, *Barnes v. Yahoo!*, 570 F.3d 1096 (9th Cir. 2009) is directly on point and holds that "section 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" 570 F.3d at 1103 (citing *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170 (9th Cir. 2008) (en banc) ("*Roommates*")).  Dr. Long makes no effort to distinguish, and indeed does not even cite, *Yahoo!*.

Instead, Dr. Long seizes onto a distinction drawn in *Roommates* between developers and publishers to argue that Facebook is a developer and therefore not entitled to section 230 immunity. However, he fundamentally misunderstands the material difference between a developer and a publisher. Development under Section 230 refers "not merely to augmenting that content generally, but to materially contributing to its alleged unlawfulness." *Roommates*, 521 F.3d at 1167-68.  *Roommates* involved a website that solicited discriminatory information in violation of the Fair Housing Act and state discrimination laws.  521 F.3d at 1166.  Users could not "refuse to answer if they want to use defendant's services."  *Id* .  The Ninth Circuit held that "[b]y requiring subscribers to provide the information as a condition of accessing its service, and by providing a limited set of pre-populated answers, Roommate becomes much more than a passive transmitter of information provided by others; it becomes the developer, at least in part, of that information."  *Id.*

Conversely, in the same case the Ninth Circuit held that Roommate **was** protected by Section 230 for "discriminatory statements displayed in the 'Additional Comments' section of profile pages" because that section "does not provide any specific guidance as to what the essay should contain, nor does it urge subscribers to input discriminatory preferences."  *Id.* at 1173-74.  It clarified that:

> This is an immunity statute we are expounding, a provision enacted to protect websites against the evil of liability for ***failure to remove offensive content***. . . . [I]n cases of enhancement by implication or development by inference . . . section 230 must be interpreted to protect websites not merely from ultimate liability, ***but from having to fight costly and protracted legal battles.***

1   *Id.* at 1174-75 (emphasis added).

2        Here, Dr. Long does not accuse Facebook of directly soliciting infringing materials or designing

3   its site to specifically elicit infringing information.  Nor does he accuse Facebook of independently

4   publishing links to the infringing content.  Instead, he accuses Facebook of "not acting timely and

5   expeditiously to remove Dorset as administrator of the Bandha page and remove the infringing content."

6   Opp. at 21:19-21.  This is the precise type of liability that Section 230 immunizes.

7        *Batzel v. Smith*, 333 F.3d 1018, 1033 (9th Cir. 2003), is also inapposite.  There, the Ninth Circuit

8   held Section 230 did not provide immunity to a website operator who received a letter ***not intended for***

9   ***online publication*** but who independently decided to make the letter public.  *Batzel*, 333 F.3d at 1033.

10  The Ninth Circuit clarified in *Roommates* why this distinction in *Batzel* matters:

11          [A]ny activity that can be boiled down to deciding whether to exclude material that
            third parties seek to post online is perforce immune under section 230.  But if the
12          editor publishes material that he does not believe was tendered to him for posting
            online, then he is the one making the affirmative decision to publish, and so he
13          contributes materially to its allegedly unlawful dissemination.  He is thus properly
            deemed a developer and not entitled to CDA immunity.
14

15  *Roommates*, 521 F.3d at 1170-71.

16       Unlike the defendant in *Batzel*, Facebook did not make the initial affirmative decision to make the

17  material in question public.  Dr. Long seeks to hold it responsible only for failing to remove that material

18  after a third party had decided to make it public.  Therefore, under binding Ninth Circuit precedent,

19  Facebook is "perforce immune under section 230."  *Roommates*, 521 F.3d at 1171; *see also Caraccioli*,

20  700 Fed. App'x at 590 ("Facebook did not become the 'information content provider' under § 230(c)(1)

21  merely by virtue of reviewing the contents of the suspect account and deciding not to remove it.").

22          **3.    Plaintiff pleads only inaction on the part of Facebook, and inaction is
                    insufficient to support an aiding and abetting claim.**
23

24       Aiding and abetting liability requires that the defendant provided "a significant and active, as well

25  as a knowing participation in the wrong."  *Diaz v. Intuit, Inc.*, No. 5:15-cv-01778-EJD, 2018 WL

26  2215790, at *8 (N.D. Cal. May 15, 2018) (quoting *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511,

27  1520 (N.D. Cal. 1990) (citation omitted)); *see also Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th

28  1138, 1146 (2005).  As discussed in Facebook's opening brief, the FAC alleges precisely the opposite:

that Facebook is liable for its "inaction."  FAC ¶ 173.  Dr. Long cites *Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1325-26 (1996) to support imposing aiding and abetting liability on Facebook for mere failure to prevent the infringing content from being published.  But *Fiol* holds, consistent with Facebook's argument, that "[m]ere knowledge that a tort is being committed and the failure to prevent it does not constitute aiding and abetting. . . . 'As a general rule, one owes no duty to control the conduct of another. . . .'" *Id.* at 1326 (quoting *Davidson v. City of Westminster*, 32 Cal. 3d 197, 203 (1982)) (citation omitted).

Perhaps recognizing that one cannot aid and abet "through inaction," which is how the FAC alleges that Facebook aided and abetted, FAC ¶ 173, Dr. Long points to paragraphs contained in other sections of the FAC and only incorporated by reference into his aiding-and-abetting claim through boilerplate language.  FAC ¶¶ 64, 65, 68, 72, 73, 76, 77, 81, 88, 89, 97, 98, 100.  But these paragraphs, too, allege merely inaction, or communication with Dr. Long—neither of which constitute significant, active, knowing participation in the wrongs visited on Dr. Long by the hackers.  Indeed, the only "action" Dr. Long alleges Facebook took directed at the Dorset defendants was to disable their account and ban them from the service.  FAC ¶ 86.  ("Facebook removed Tammy Dorset as the administrator of the Bandha Yoga page, and removed all posts posted by Tammy Dorset[.]").

Because inaction does not constitute "substantial assistance," Dr. Long's aiding and abetting claim should be dismissed.

### 4.    Plaintiff fails to identify a promise in Facebook's Terms of Service which was not kept.

The FAC alleges that Facebook breached its promise to "take appropriate action, such as offering help, removing content, blocking access to certain features, disabling accounts, or contacting law enforcement."  FAC ¶ 176.  But as the FAC acknowledges, Facebook took these measures.  FAC ¶ 86 ("Facebook removed Tammy Dorset as the administrator of the Bandha Yoga page, and removed all posts by Tammy Dorset[.]").  At most, Dr. Long accuses Facebook of not complying with its Terms of Service fast enough, but there is no allegation that Facebook promised to act within a specified time frame.  Therefore, Facebook upheld this provision of the contract, and Dr. Long's breach of contract

1    claim fails.[6]

2    **5.      Plaintiff fails to address the economic loss rule and cites only cases in which**
3            **the court dismissed negligence claims.**

4            As Facebook argued in its opening brief, "[t]he economic loss rule requires a purchaser to recover

5    in contract for purely economic loss due to disappointed expectations, unless he can demonstrate harm

6    above and beyond a broken contractual promise." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.

7    4th 979, 988 (2004). "[U]nder California law, '[i]n the absence of (1) personal injury, (2) physical

8    damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common

9    law exception to the rule, recovery of purely economic loss [in tort] is foreclosed.'" *In re Sony Gaming*

10   *Networks and Customer Data Security Breach Litig.*, 996 F. Supp. 2d 942, 967 (S.D. Cal. 2014) (quoting

11   *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008)). Dr. Long

12   utterly fails to address Facebook's argument that economic loss rule forecloses his negligence claim.

13   Indeed, the text of the economic loss rule section of his brief does not contain the phrase "economic loss

14   rule." *See* Opp. at 24:5-24.

15           Instead of responding to Facebook's argument, Dr. Long cites three unpublished district court

16   cases for the proposition that it is theoretically possible to plead both negligence and breach of contract.

17   In all three cases, the negligence claim was dismissed or struck, twice with prejudice. *See Bassam v.*

18   *Bank of Am.*, No. CV 15-00587 MMM (FFMx), 2015 WL 12697873, at *4, 11 (C.D. Cal. Nov. 3, 2015);

19   *Juntilla v. Aurora Loan Servs., LLC*, No. CV 11-08201 DDP (PJWx), 2013 WL 1303820, at *3 (C.D.

20   Cal. Mar. 28, 2013); *Derusseau v. Bank of Am., N.A.*, No. 11 CV 1766 MMA (JMA), 2011 WL 5975821,

21   at *6-7 (S.D. Cal. Nov. 29, 2011). None of these cases establish that the economic loss rule does not

22   apply, or even address the economic loss rule. The fact that it is theoretically possible to plead both

23   causes of action in some cases is immaterial. The economic loss rule bars a negligence claim here

24   because Dr. Long seeks to recover only damages for harm to his "existing and prospective business

25   relationships and professional relationships." FAC ¶ 170. These are entirely economic harms that do not

26   fit any of the four exceptions to the economic loss rule. Dr. Long identifies no special relationship

27

28   ---
     [6] And, as explained earlier, this provision must be read in harmony with the provision disclaiming
     liability for the actions of third parties.

between the parties, but instead claims Facebook owes him a duty that arises from a transactional business relationship.  Opp. at 24:19 (citing FAC ¶ 95).  This is synonymous with a contractual relationship and is precisely the type of negligence claim the economic loss rule bars.

Because the economic loss rule applies, Dr. Long's negligence claim must be dismissed.

### 6.  Only restitution is available under the UCL, not compensatory damages.

Finally, Dr. Long argues that equitable relief may include compensatory relief, and that both are available under the UCL.  Opp. at 25:1-3, 25:12-17.  This is simply not true.  As this Court has previously recognized, "[r]estitution is the only monetary relief allowed under the UCL, and money damages are not available."  *Dep't of Fair Employment and Housing v. Lucent Tech., Inc.*, No. C 07-3747 PJH, 2008 WL 5157710, at *20 (N.D. Cal. Dec. 8, 2008).  Because Dr. Long seeks only money damages, FAC ¶ 190, he has no available remedy under the UCL, and therefore, no standing to bring this claim.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## III.   CONCLUSION

Dr. Long has now had the opportunity to try to explain why his claims are not subject to dismissal.  He has not succeeded—and in a number of cases, as discussed above, he did not even try.  There is no reason to think that the claims can be saved by further amendments.  The case should be dismissed with prejudice.

Dated:  January 22, 2019                    DURIE TANGRI LLP


                                        By:   _____*/s/ Joseph C. Gratz*_____
                                              JOSEPH C. GRATZ

                                        Attorneys for Defendant
                                        FACEBOOK, INC.

1

## CERTIFICATE OF SERVICE

2

3        I hereby certify that on January 22, 2019 the within document was filed with the Clerk of the

Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

4

5                                                         /s/ Joseph C. Gratz
                                                         JOSEPH C. GRATZ

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FACEBOOK'S REPLY IN SUPPORT OF ITS NOTICE OF MOTION AND MOTION TO DISMISS / CASE
NO. 4:17-CV-02758-PJH