UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND LONG, et al.,<br>Plaintiffs,<br>v.<br>TAMMY DORSET, et al.,<br>Defendants. | Case No. 17-cv-02758-PJH<br><br>**ORDER GRANTING MOTION TO DISMISS**<br>Re: Dkt. No. 35 |

Defendant Facebook, Inc.'s ("Facebook") motion to dismiss came on for hearing before this court on February 13, 2019. Plaintiffs Raymond Long and his corporation, Bandha Yoga Publications, LLC ("Bandha LLC," together with Long, "plaintiff") appeared through their counsel, Barry Coburn and Ross Libenson. Facebook appeared through its counsel, Joseph Gratz. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion, for the following reasons.

**BACKGROUND**

This is a copyright infringement action brought by plaintiff against defendants Facebook and "Tammy Dorset," who is a computer hacker and whose true identity remains unknown. Dkt. 27, First Amended Complaint (the "FAC"), ¶¶ 8-9.[1]

Plaintiff is an expert on yoga and the effects of yoga poses. Id. ¶ 12. He owns copyrights to Bandha Yoga and "directly, or through Bandha LLC, holds exclusive rights to its related publications, including books[,]" articles, videos, and other interactive media.

---

[1] Despite filing this action nearly two years ago, plaintiff has not yet served Dorset.

Id. ¶ 14. The infringing material at issue in this case comes from his copyrighted books and anatomical illustrations (the "Scientific Keys Illustrations"). FAC ¶¶ 15-18. Plaintiff also operates an online blog, the Daily Bandha, that contains some of his protected material. Id. ¶ 22.

Facebook allows individual and business users to create pages on Facebook's online platform. Id. ¶ 10. Plaintiff established and runs a Facebook business page called "Bandha Yoga-The Scientific Keys (the "Bandha Yoga page" or the "page"). Id. ¶¶ 24. Like all Facebook business pages, the Bandha Yoga page has password-protected administrative access. Id. ¶ 28.

Plaintiff does not dispute that he agreed to Facebook's Terms of Service (the "ToS"). In fact, the FAC relies on the ToS's statement that it "employ[s] dedicated teams around the world . . . to detect misuse of [Facebook's] Products [and] harmful conduct[.] . . . If [Facebook] learn[s] of content or conduct like this, [Facebook] will take appropriate action – for example, offering help, removing content, blocking access to certain features, [or] disabling an account[.]" Id. ¶ 32; FAC, Ex. 1 (Facebook's ToS).

On or about May 24, 2015, Dorset accessed the Bandha Yoga page and changed the administrative passwords, establishing him or herself as the administrator and locking out plaintiff. FAC ¶¶ 38, 40. Dorset used the page to misuse plaintiff's copyrighted material, including the Scientific Key Illustrations. Id. ¶ 35. Dorset posted plaintiff's copyrighted images to the Bandha Yoga page and configured those posts so that "when a user clicked on the copyrighted material, [the user] would be redirected to a website that closely resembled Dr. Long's blog." FAC ¶ 36. The fake blog contained pornographic advertisements and attempted to install malicious malware on the user's device. Id. Between May 24 and June 1, 2015, Dorset continued to post copyrighted material with embedded links on the Bandha Yoga page. FAC ¶¶ 60-61.[2]

---

[2] Though the FAC alleges Dorset retained control of the page through June 2, 2015, the parties do not dispute that Facebook restored plaintiff's control of the page on the morning of June 1, 2015. See Dkt. 35-4, Ex. 4 at 1-2.

2

Between May 24, 2015, and June 1, 2015, plaintiff sent a series of emails to Facebook, stating that the Bandha Yoga page had been hacked, that plaintiff was the rightful owner of the page, and that the hacker was posting copyright-infringing materials. FAC ¶¶ 42, 44-46, 51-53, 57, 65-76. Some of plaintiff's emails to Facebook stated that the email constituted "official notification under Section 512(c) of the Digital Millennium Copyright Act ('DMCA')." FAC ¶¶ 45-46; Dkt. 35-1, Ex. 1. At least two other emails, sent on May 26th and May 28th, invoked the same section and attached over 100 screenshots of copyrighted material Dorset had posted on the Bandha Yoga page. Dkt. 35-2, Ex. 2; Dkt. 35-3 Ex. 3.[3]

On May 24, 2015, Facebook responded to plaintiff's initial emails, stating, inter alia, that "if your submission contains a report of alleged infringement/violation of your legal rights, no further action is necessary. We will look into your matter shortly." Ex. 4 at 6. The next business day, May 26, 2015, Facebook sent another email that sought to clarify whether plaintiff was making an intellectual property claim or writing about a page administration issue. Ex. 2 at 2; FAC ¶ 69. Over the next several days, plaintiff and Facebook continued to exchange emails about those issues. FAC ¶¶ 68-85.

On June 1, 2015, five business days after Dorset hacked plaintiff's Facebook page, Facebook restored plaintiff's administrator status to the page. Ex. 4. Though plaintiff is now suing Facebook for its conduct during that five-business-day period, plaintiff does not dispute that that solution resolved the alleged infringement occurring on Facebook's platform. FAC ¶ 89; FAC Ex. 2 (plaintiff stating "This issue can be quickly resolved by restoring me as administrator of page."); Ex. 4 at 5 (similar).

Based on the above conduct, plaintiff asserts fourteen causes of action. Facebook moves to dismiss the seven causes of action asserted against it: (i) Copyright infringement under the Copyright Act, 17 U.S.C. §§ 106, 501; (ii) contributory copyright infringement under the Copyright Act; (iii) vicarious copyright infringement under the

---

[3] The email attachments also included a lengthy list of links to the Daily Bandha.

3

1  Copyright Act; (iv) negligence; (v) aiding and abetting; (vi) breach of contract; and (vii)
2  violation of California's Unfair Competition Law (the "UCL"), § 17200 et seq.

## DISCUSSION

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).

While the court must accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' " Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the

document. See Sanders v. Brown, 504 F.3d 903, 910 (9th Cir. 2007). That is, the court may consider matters that are properly the subject of judicial notice, Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005); Lee v. City of L.A., 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider exhibits attached to the complaint, see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989), and documents referenced extensively in the complaint and documents that form the basis of a the plaintiff's claims. See No. 84 Emp'r-Teamster Jt. Counsel Pension Trust Fund v. Am. W. Holding Corp., 320 F.3d 920, 925 n.2 (9th Cir. 2003).

**B. Analysis**

    **1. The DMCA's Safe Harbors Shield Facebook From Copyright Infringement Liability**

There are two principal features of the DMCA. First, the DMCA created a "notice and takedown protocol," through which a copyright owner who suspects that his or her copyright is being infringed may notify the service provider of potential infringing activity occurring on its network. See Rossi v. Motion Picture Ass'n of Am. Inc., 391 F.3d 1000, 1003 (9th Cir. 2004) ("When a copyright owner suspects his copyright is being infringed, he must follow the notice and takedown provisions set forth in § 512(c)(3) of the DMCA[.]"). The DMCA provides detailed specifications of what a copyright holder must include in its notice to the service provider. See 17 U.S.C. § 512. A service provider that fails to take down properly-noticed material exposes itself to copyright liability.

As this notice and takedown regime makes apparent, "a service provider need not affirmatively police its users for evidence of repeat infringement." Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1111 (9th Cir. 2007). "Congress made a considered policy determination that the DMCA notification procedures [would] place the burden of policing copyright infringement—identifying the potentially infringing material and adequately documenting infringement—squarely on the owners of the copyright." UMG Recordings, Inc. v. Shelter Capital Partners LLC, 718 F.3d 1006, 1022 (9th Cir. 2013) (internal quotation marks omitted). And the Ninth Circuit has "decline[d] to shift [that] substantial

5

burden from the copyright owner to the provider." Id.

Second, the DMCA provides "four safe harbors that preclude imposing monetary liability on service providers for copyright infringement that occurs as a result of specified activities." Id. at 1015. These safe harbors are detailed in §§ 512(a) through 512(d). See 17 U.S.C. §§ 512(a)-(d). Although the safe harbors "do not render a service provider immune from copyright infringement," they do "protect eligible service providers from all monetary and most equitable relief that may arise from copyright liability." Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098 (W.D. Wash. 2004) (discussing Ellison v. Robertson, 357 F.3d 1072, 1077 (9th Cir. 2004)) rejected on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612, 615 (9th Cir. 2010). A service provider, however, will not be protected by the safe harbors, if it fails to comply with the safe harbors' takedown requirements.

Here, plaintiff only argues that the safe harbors do not protect Facebook because it failed to act expeditiously in response to plaintiff's DMCA notices.[4] "Service providers [ ] forfeit entitlement to the safe harbor if they fail to expeditiously remove the infringing material upon receipt of notification of the infringement or upon otherwise becoming aware of it." Capitol Records, LLC v. Vimeo, LLC, 826 F.3d 78, 83 (2d Cir. 2016). Specifically, the three safe harbors potentially relevant here provide that, "'upon notification of claimed infringement . . .,' the [service provider] [must] 'respond[ ] expeditiously to remove, or disable access to, the material that is claimed to be infringing.'" Recording Indus. Ass'n of Am., Inc. v. Verizon Internet Servs., Inc., 351 F.3d 1229, 1234 (D.C. Cir. 2003) (quoting and citing 17 U.S.C. §§ 512(b)(2)(E), 512(c)(1)(C), and 512(d)(3)). Simply put, "to maintain its shield, [the service provider] must respond

---

[4] Plaintiff also argues that none of the safe harbors apply because Facebook did not have a "reasonably implemented . . . policy that provides for the termination of . . . repeat [copyright] infringers," as required by 17 U.S.C. § 512(i)(1)(A). The FAC affirmatively alleges the opposite. Compare FAC ¶¶ 42, 44, 69 with CCBill, 488 F.3d at 1109 (discussing what constitutes implementation of a sufficient policy); see also Exs. 2-3. Nor has plaintiff alleged that Dorset is a repeat offender.

6

1  expeditiously and effectively to" a copyright holder's DMCA-compliant notice. Ventura

2  Content, Ltd. v. Motherless, Inc., 885 F.3d 597, 604 (9th Cir. 2018). If it does, "the

3  service provider will not be financially liable for infringing material on [its] website." Id.

4  Faced with the daunting task of arguing that Facebook's five-day response time

5  was not "expeditious," plaintiff argues instead that expeditiousness is a question of fact

6  that cannot be decided on a motion to dismiss. Facebook responds that plaintiff's notices

7  were not compliant—thus obviating the need for Facebook to act at all—and that, in any

8  event, Facebook acted expeditiously in response to the notices. The court finds no

9  cause to reach Facebook's former argument because Facebook's expeditious response

10 shields it from liability regardless of whether plaintiff sent notices that complied with the

11 DMCA's requirements.

12 As an initial matter, neither party cited any case that held the question of

13 expeditiousness could or could not be decided on a motion to dismiss.[5] Nor is the court

14 aware of any such case. That said, numerous cases have granted summary judgment

15 based on the defendant's compliance with the expeditious requirement. For example, in

16 Ventura Content, the Ninth Circuit affirmed the lower court's summary judgment in favor

17 of the service provider because the service provider's deletion of the allegedly infringing

18 material on the same day, "satisfied the 'responds expeditiously to remove' requirement."

19 Ventura Content, 885 F.3d at 612. Similarly, in Io Grp., Inc., the court granted summary

20 judgment based, in the alternative, on the "undisputed evidence" showing that the

21 defendant "responds and removes noticed content as necessary on the same day the

22 notice is received (or within a few days thereafter)." Io Grp., Inc. v. Veoh Networks, Inc.,

23 586 F. Supp. 2d 1132, 1150 (N.D. Cal. 2008). Other courts concur. Obodai v. Demand

24 Media, Inc., 2012 WL 2189740, at *7 (S.D.N.Y. June 13, 2012) (email showing that the

---

[5] Facebook's citation to Shropshire v. Canning, No. 10-CV-01941-LHK, 2011 WL 90136, at *5 (N.D. Cal. Jan. 11, 2011), does not further its argument. While the Shropshire court dismissed the complaint and noted that the service provider removed the content within 10 days, the service provider was not a defendant in the action and the actual defendant's motion to dismiss was not premised on the expeditious requirement.

1   defendant sent notice to infringing user 22 days after receiving notice from copyright
2   holder "establishes that the defendant expeditiously removed the infringing works") aff'd
3   sub nom. Obodai v. Cracked Entm't Inc., 522 F. App'x 41 (2d Cir. 2013); Avdeef v.
4   Google, Inc., 2015 WL 5076877, at *1, 3-4 (N.D. Tex. Aug. 26, 2015) (14 days is
5   expeditious); Capitol Records, LLC v. Vimeo, LLC, 972 F. Supp. 2d 500, 535-36
6   (S.D.N.Y. 2013) ("It cannot be disputed that [a] one-day response time . . . constitutes
7   expeditious removal"; and three and a half weeks is expeditious to remove 170 videos)
8   vacated in part on other grounds Capitol Records, LLC v. Vimeo, LLC, 826 F.3d 78, 99
9   (2d Cir. 2016); Wolk v. Kodak Imaging Network, Inc., 840 F. Supp. 2d 724, 734, 746-48
10  (S.D.N.Y. 2012) (five days to remove 700 photographs is expeditious).[6]

11  In addition, the purpose of the DMCA would be undermined if the issue of expeditiousness could not be resolved, when appropriate, as a matter of law. Congress enacted Title II in of the DMCA in 1998 "to provide greater certainty to service providers concerning their legal exposure for infringements that may occur in the course of their activities." Perfect 10, Inc. v. Amazon.com, Inc., 508 F.3d 1146, 1158 (internal quotation marks omitted). "Congress recognized that '[i]n the ordinary course of their operations service providers must engage in all kinds of acts that expose them to potential copyright infringement liability.' " UMG Recordings, 718 F.3d at 1014 (quoting S. Rep. No. 105–190, at 8 (1998)). The DMCA represents "Congress's foray into mediating the competing interests in protecting intellectual property interests and in encouraging creative development of devices for using the Internet to make information available." Columbia

---

[6] Facebook's reliance on Perfect 10, Inc. v. Google, Inc., No. CV 04-9484 AHM SHX, 2010 WL 9479059, at *9 (C.D. Cal. July 26, 2010), is misplaced. There, the court denied defendant's motion for summary judgment because there remained a "factual dispute as to how long the processing took"—with defendant presenting evidence that it took one-to-two weeks and plaintiff presenting evidence it took up to seventeen months. Facebook argues that that conclusion implies a one or two-week response time would be expeditious as a matter of law. That inference does not follow because plaintiff did not move for summary judgment on the expeditiousness issue. With defendant as the moving party, the court's conclusion that a factual dispute remains only shows that seventeen months may not be expeditious. Hardly a controversial conclusion.

1  Pictures Indus., Inc. v. Fung, 710 F.3d 1020, 1024 (9th Cir. 2013).

2  In short, "[a]lthough Congress was aware that the services provided by . . .
3  [service providers] are capable of being misused to facilitate copyright infringement, it
4  was loath to permit the specter of liability to chill innovation that could also serve
5  substantial socially beneficial functions. Congress decided that 'by limiting [service
6  providers'] liability,' it would 'ensure [ ] that the efficiency of the Internet will continue to
7  improve and that the variety and quality of services on the Internet will continue to
8  expand." UMG Recordings, 718 F.3d at 1014 (quoting S.Rep. No. 105-190, at 8 (1998)).

9  Plaintiff's proposed rule—that expeditiousness can never be decided at a motion
10 to dismiss—would undermine the DMCA's purpose. Under plaintiff's rule, courts could
11 never apply the safe harbors at the motion to dismiss stage because a question of fact
12 would always exist as to whether the service provider acted expeditiously as required by
13 the safe harbors. That result does not respect the balance that Congress sought to strike
14 between "protecting intellectual property interests" and encouraging internet innovation
15 because it "permits the specter of liability"—through the costs imposed by extensive (and
16 unnecessary) discovery—"to chill innovation." Id. And it certainly does not help limit or
17 "'clarif[y] the liability faced by service providers who [unwittingly] transmit potentially
18 infringing material over their networks.'" Capitol Records, 826 F.3d at 82 (quoting S.
19 Rep. No. 105-190, at 2 (1998)).

20 That is not to say that the issue of expeditiousness is always ripe for decision at
21 the motion to dismiss stage. Often the opposite will be true. For example, the parties
22 might dispute how long it took for defendant to respond to the notice. Or the complaint
23 may allege circumstances giving rise to the inference that a response time of a specific
24 number of days or weeks was not expeditious. But that is not the case here.

25 Under the facts allege here, the court finds that Facebook's five-business-day
26 response satisfies the DMCA's expeditious requirement. Plaintiff sought the removal of
27 over a hundred allegedly infringing images and also sought the restoration of his
28 administrator status. Exs. 2-3. Facebook promptly responded to plaintiff's initial email

9

and, over the next several days, continued to exchange emails with plaintiff to resolve the issue. A total of five business days after it first received notice of the alleged infringement, Facebook resolved plaintiff's complaint. Based on those allegations, the court finds that the DMCA's safe harbors apply to plaintiff's copyright claims against Facebook because Facebook "satisfied the 'responds expeditiously to remove' requirement." See Ventura, 885 F.3d at 612; see also Seide v. Level-(1) Glob. Sols., LLC, No. 16 C 2975, 2016 WL 4206076, at *5 n.5 (N.D. Ill. Aug. 10, 2016) (noting on a motion to dismiss that "five days sounds rather expeditious to the court, and the case law on the issue seems to agree[,]" but finding no cause to reach the issue).

Accordingly, plaintiff's copyright claims are DISMISSED WITH PREJUDICE.[7]

## 2. Plaintiff's Tort Claims Are Barred by § 230 of the Communications Decency Act

Under § 230(c)(1) of the Communications Decency Act ("CDA"), a party is shielded from liability if the party is: "(1) a provider or user of an interactive computer service (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3) of information provided by another information content provider." Barnes v. Yahoo!, Inc., 570 F.3d 1096, 1100–01 (9th Cir. 2009).

The parties do not dispute that Facebook is an interactive computer service. Nor do the parties dispute that the material was provided by another information content provider. Plaintiff argues only that Facebook is a "developer" of the information for purposes of § 230 because Facebook failed to adequately address plaintiff's infringement-related complaints.

True, "developers" of content are not entitled to immunity under § 230. See Fair

---

[7] Plaintiff also fails to state a direct, contributory, or vicarious copyright claim against Facebook because plaintiff only alleges that Facebook failed to remove the content as fast as plaintiff would have liked. See Perfect 10, Inc. v. Giganews, Inc., 847 F.3d 657, 666 (9th Cir. 2017) ("[D]irect liability must be premised on conduct that can reasonably be described as the direct cause of the infringement;" vicarious liability requires allegations that "customers were drawn to [defendant's] services because of the infringing . . . material at issue"); Amazon.com, 508 F.3d at 1170 ("[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement . . .").

10

Hous. Council of San Fernando Valley v. Roommates.Com, LLC, 521 F.3d 1157, 1166 (9th Cir. 2008). An interactive computer service may be a "developer" where it "does not merely provide a framework that could be utilized for proper or improper purposes; [but] rather . . . is directly involved with developing" the unlawful content. Id. at 1172. The FAC is devoid of allegations showing that Facebook was "directly involved" with developing or posting the infringing material.

> "To be sure, the website provided neutral tools, which the anonymous dastard used to publish the [infringing material], but the website did absolutely nothing to encourage the posting of [ ] [the] content—indeed, the [ ] posting[s] w[ere] contrary to the website's express policies. That is precisely the kind of activity for which Congress intended to grant absolution with the passage of § 230."

Id. at 1171-72; see also Barnes, 570 F.3d at 1102–03 (§ 230 "protects from liability 'any activity that can be boiled down to deciding whether to exclude" third party material).

Accordingly, plaintiff's state law tort claims are DISMISSED WITH PREJUDICE.

### 3. Plaintiff Has Not Stated A Contract Claim

Plaintiff claims Facebook breached the ToS provision that states Facebook will "take appropriate action, [by] [ ] for example, offering help, removing content, blocking access to certain features, disabling an account, or contacting law enforcement." FAC Ex. 1; see FAC ¶ 176. To counter the fact that the FAC affirmatively alleges that Facebook did help by reinstating plaintiff as the administrator, plaintiff falls back on his argument that Facebook breached the contract by acting too slowly. Because Facebook's ToS "does not state a specific time in which the parties must meet the requirements of the contract, [ ] the parties must meet them within a reasonable time." CACI No. 319 (emphasis added) ("Interpretation—Reasonable Time" for performance of contract); Cal. Civ. Code § 1657 (similar). Plaintiff's own allegations show that Facebook acted within five days, a manifestly reasonable time given the FAC's other allegations.

Plaintiff also contends that Facebook failed to comply with certain obligations created by the ToS, including its promise to "employ dedicated teams . . . and develop technical systems to detect misuse of their products, harmful conduct towards others,

11

and situations where [Facebook] may be able to support [its] community." FAC ¶ 176. First, the FAC contains no factual allegations suggesting that Facebook does not comply with that part of the ToS. Indeed, parts of the FAC suggest the opposite. See, e.g., FAC ¶¶ 43-45, 53, 58. Second, while Facebook's ToS "place[s] restrictions on users' behavior," it "do[es] not create affirmative obligations." Caraccioli v. Facebook, Inc., 167 F. Supp. 3d 1056, 1064 (N.D. Cal. 2016), aff'd, 700 F. App'x 588 (9th Cir. 2017). Third, the ToS disclaimed the type of harm plaintiff alleges here. FAC Ex. 1 (service provided "as is," "no guarantees" about "secur[ity]"; "not responsible for [third-party] actions.).

Accordingly, plaintiff's contract claim is DISMISSED WITH PREJUDICE.

### 4. Plaintiff Has Not Stated A UCL Claim

Plaintiff's UCL claim alleges that the "procedures provided by Facebook . . . were inherently faulty and defective and could not accomplish the purposes for which Facebook sold and advertised them to plaintiffs." FAC ¶ 182. Plaintiff's UCL claim fails for at least two reasons. First, the FAC does not include any factual allegations that show how Facebook's procedures were faulty. In fact, read as a whole, the complaint shows the opposite: Facebook's procedures resolved plaintiff's copyright infringement and administrator issues within five days. Second, plaintiff's UCL claim seeks "damages." FAC ¶ 190. But the UCL provides no such relief: "A UCL action is equitable in nature, and damages cannot be recovered. Prevailing plaintiffs are generally limited to injunctive relief and restitution." Alch v. Superior Court, 122 Cal. App. 4th 339, 404 (2004) (citation and quotation marks omitted). And plaintiff has not explained why his "damages" are restitutionary in nature.[8]

Accordingly, because it is possible plaintiff may be able to state a viable claim, the UCL claim is DISMISSED WITHOUT PREJUDICE.

### CONCLUSION

For the foregoing reasons, the court GRANTS Facebook's motion to dismiss WITH

---

[8] Plaintiff also fails to specify which prong of the UCL his claim is based upon. If, as it appears, plaintiff is invoking the fraud prong, then plaintiff must satisfy Rule 9(b).

12

1 PREJUDICE IN PART and WITHOUT PREJUDICE IN PART.  Plaintiff's copyright infringement causes of action against Facebook fail because the DMCA safe harbors provide Facebook with immunity from liability.  See FAC ¶¶ 102-126 (causes of action one through three).  Section 230 of the CDA provides Facebook with immunity from the two state tort law causes of action asserted against it.  See FAC ¶¶ 167-174 (causes of action 11 and 12).  Plaintiff has also failed to (and cannot) state a breach of contract claim, see FAC ¶¶ 175-180 (cause of action 13), because Facebook's ToS does not specify the time period within which Facebook was required to act and plaintiff alleges Facebook acted within five business days, a "reasonable time" under Cal. Civ. Code § 1657.  Because the court finds that further amendment of those causes of action against Facebook would be futile, they are DISMISSED WITH PREJUDICE.  Plaintiff has also failed to allege sufficient facts to state a claim under California's Unfair Competition Law.  See FAC ¶¶ 181-184 (cause of action 14).  That cause of action is DISMISSED WITHOUT PREJUDICE.

Any amended complaint shall be filed no later than March 22, 2019.  No new parties or claims may be added without leave of court.  By the same date, plaintiff shall file a statement that indicates how he intends to proceed against the Dorset defendant.

**IT IS SO ORDERED.**

Dated: February 22, 2019

_____
PHYLLIS J. HAMILTON
United States District Judge