**NOT FOR PUBLICATION**

FILED

APR 23 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| RAYMOND LONG; BANDHA YOGA PUBLICATIONS, LLC,<br><br>Plaintiffs-Appellants,<br><br>v.<br><br>TAMMY DORSET; FACEBOOK, INC.,<br><br>Defendants-Appellees. | No. 20-15036<br><br>D.C. No. 4:17-cv-02758-PJH<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, District Judge, Presiding

Argued and Submitted March 10, 2021
San Francisco, California

Before: GOULD and FRIEDLAND, Circuit Judges, and ERICKSEN,[**] District Judge.

Raymond Long[1] is a physician and yoga practitioner who owns the copyrights to books and scientific illustrations about the anatomical effects of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota, sitting by designation.

[1] We refer to Plaintiffs Raymond Long and his corporation, Bandha Yoga Publications LLC, collectively as "Long."

yoga. Long operates a website that features some of those copyrighted texts and illustrations. To promote his work, Long also maintains a Facebook business page where he markets his intellectual property. An unknown hacker using the pseudonym Tammy Dorset illicitly gained administrator access to Long's Facebook page. Once in control, Dorset posted on the page links that displayed illustrations and text to which Long owned the copyright; the links directed users to a third-party website that contained further infringing copies of Long's copyrighted work and that installed a software virus on viewers' computers. Long contacted Facebook, and after eight days of email communications, Facebook revoked Dorset's administrator access, an action that automatically deleted all of Dorset's posts, including those that contained or linked to infringing material.

Long sued Facebook, alleging that its failure to timely remove Dorset's infringing posts made it directly, contributorily, and vicariously liable for infringement of his exclusive copyrights. He also raised negligence and aiding and abetting claims under state law.[2] The district court dismissed each of these claims. We affirm.

1. "[D]irect infringement requires the plaintiff to show causation (also referred to as 'volitional conduct') by the defendant." *Perfect 10, Inc. v.*

---

[2] The district court also dismissed Long's breach of contract claim and Unfair Competition Law claim; Long does not appeal the grounds on which the district court dismissed those claims.

*Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017). Long has not stated a claim for direct infringement because the facts pleaded in his Complaint do not allege volitional conduct by Facebook. In other words, he does not assert that the "distribution [of the copyrighted material did] not happen automatically" or that Facebook "exercised control," "selected any material for upload, download, transmission, or storage; or instigated any copying, storage, or distribution." *Id.* at 669-70. Rather, it was Dorset who "cause[d] the copying." *Id.* at 666. Long argues that Facebook's failure to promptly remove Dorset's posts amounted to volitional conduct. But we have rejected such failure-to-act arguments when, as here, an online service provider "took affirmative action to address the claims" by requesting further information from the copyright holder upon being informed of potential infringement on its website. *VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 734 (9th Cir. 2019).

2. Long has failed to state a claim for vicarious infringement because he has not pleaded facts indicating that Facebook "derive[d] a direct financial benefit from the direct infringement." *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1173 (9th Cir. 2007). Long's allegations that he paid Facebook to post advertisements for his business page on users' newsfeeds do not suffice as allegations that Facebook made money from Dorset's infringing posts on that page specifically.

3. We affirm the dismissal of Long's contributory infringement claim. Although Long alleges that he emailed Facebook screenshots of Dorset's posts that, according to Long, displayed his copyrighted work,[3] he failed to plausibly allege that Facebook had "*actual* knowledge that *specific* infringing material [was] available using its system." *Id.* at 1172 (quoting *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1022 (9th Cir. 2001)). Viewing the screenshots in conjunction with the text of Long's accompanying emails, the list of links to his website that Long also attached (which themselves included a different set of text and images), and Long's simultaneous request to restore his page administrator status, the Complaint fails to plausibly establish that Facebook actually knew precisely what infringing material was available on Facebook.

This defect could theoretically, however, be "cured by the allegation of other facts." *Cook, Perkiss & Liehe Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990). For instance, if Long could plead facts describing a different communication to Facebook that clearly identified a set of specific infringing images on Facebook and, at the same time, clearly indicated his ownership of those specific images, he could state a prima facie claim for contributory infringement,

[3] We may consider the emails between Long and Facebook and the attachments to those emails because they were referenced in the Complaint and because Long did not question their authenticity before the district court or on appeal. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

and the burden would then shift to Facebook to prove any affirmative defenses.

We note that amendment would not necessarily be futile. The court held that Facebook was entitled to the safe harbor defenses under the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, because—assuming without deciding that Long's emails satisfied § 512(c)(3)(A)'s requirements for takedown notices—Facebook's response had been expeditious as a matter of law. The DMCA is an affirmative defense, *Adobe Sys. Inc. v. Christenson*, 809 F.3d 1071, 1079 (9th Cir. 2015); Facebook's entitlement to it must therefore be "obvious on the face of [the] complaint" for it to be raised in a motion to dismiss, *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). Because an amended Complaint may plead new facts informing both whether Long's communications satisfied § 512(c)(3)(A) and whether, if so, Facebook's response was expeditious, the district court's DMCA holding does not provide an independent alternative ground for dismissal with prejudice. Therefore, we direct the district court to vacate the dismissal with prejudice and enter an order dismissing the claim without prejudice and granting Long leave to amend.

4. Facebook has immunity from Long's tort claims under 47 U.S.C. § 230. Long contends that Facebook was negligent in (1) enabling Dorset to access Long's business page; (2) failing to maintain automated responders that could refer user complaints to appropriate Facebook departments; and (3) failing to promptly

remove Dorset's infringing posts. He also asserts that Facebook aided and abetted Dorset through its inaction. But § 230 bars state law claims that seek to treat an online service provider as the publisher of another user's content, and "removing content"—or allowing content—"is something publishers do." *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 (9th Cir. 2009); *see id.* ("[S]ection 230 protects from liability 'any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online.'" (quoting *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008) (en banc))); § 230(c)(1). Nor does a service provider lose § 230 immunity by providing "neutral tools" that a third party "use[s] to publish" unlawful material when the provider does "absolutely nothing to encourage the posting of . . . [that] content." *Roommates.com*, 521 F.3d at 1171.[4]

**AFFIRMED.**

[4] Long's reliance on this statute's intellectual property exception, *see* § 230(e)(2), is unavailing: not only are Long's state tort claims unrelated to intellectual property, but the exception does not even apply to state laws protecting intellectual property, *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118-19 (9th Cir. 2007).