MAX FOLKENFLIK(To Be Submitting Substitution of Counsel
 and Application for Admission *Pro Hac Vice*)
**FOLKENFLIK & MCGERITY**
1500 Broadway, Suite 810
New York, NY 10036
Telephone:  (212) 757-0400
Facsimile:  (212) 757-2010

BARRY COBURN (Current but withdrawing counsel)
KATHERINE ZIMMERL (SBN 309963)
COBURN AND GREENBAUM, PLLC
1710 Rhode Island Ave., NW, Second floor,
Washington, D.C. 20036
Telephone: (202) 643-9472
Email:      barry@coburngreenbaum.com
Email:      katherine@coburngreenbaum.com

ROSS LIBENSON (SBN 181912)
LIBENSON LAW
1939 Harrison Street, Suite 917
Oakland, CA 94612
Telephone: (510) 451-4441
Email:      Ross@LibensonLaw.com, (State Bar No. 181912)

*Counsel for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND LONG, M.D., and BANDHA YOGA PUBLICATIONS, LLC, | Case No. 4:17-cv-02758-PJH |
| Plaintiffs, | SECOND AMENDED COMPLAINT |
| *versus* | |
| TAMMY DORSET; JOHN DOE 1-10; AND FACEBOOK, INC.,, | |
| Defendants. | |

Plaintiffs   Raymond   Long,   M.D.   ("Dr.   Long")   and   Bandha   Yoga

Publications, LCC ("Bandha LLC") (collectively "Plaintiffs"), by and through

counsel, for their Second Amended Complaint against Tammy Dorset, John Doe 1 through John Doe 10 (collectively the "Dorset defendants") and Facebook, Inc. ("Facebook") (collectively "Defendants"), allege as follows

## JURISDICTION AND VENUE

1.      This court has original jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1338(a), and supplemental jurisdiction pursuant to 28 U.S.C. §1367, as well as pendant jurisdiction over claims based on state law.

2.      This court has personal jurisdiction over Defendant Facebook. Facebook's principal place of business is located in this District. Facebook's Terms of Service requires that suits by users of its services by brought in this District.

3.      This court has personal jurisdiction of the Dorset Defendants based on the criminal acts in which they engaged.

(a)     Those acts were directed at this District and caused injury in this District.

(b)     On information and belief, Tammy Dorset and the other Dorset Defendants, either individually or through their agent, Tammy Dorset, agreed to the Facebook Terms of Service and to jurisdiction in this District.

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH

(c)     The Dorset Defendants' conduct caused injury to Plaintiffs and their intellectual property within the State of California.

4.     Venue is proper in this district pursuant to 28 U.S. §§ 1391(c) and 1400(a), in that Defendants are subject to personal jurisdiction in this District. Facebook may be found in this District. Facebook's Terms of Service specify this District as the proper forum.

## INTRADISTRICT ASSIGNMENT

5.     Pursuant to Civil L.R. 3-2(c), this matter is an Intellectual Property Action and is subject to district wide assignment, notwithstanding a substantial part of the events giving rise to the cause of action occurred in Alameda County and the City and County of San Francisco, which makes Oakland and/or San Francisco the proper assignment pursuant to Civil L.R. 3-2(d).

## THE PARTIES

6.     Dr. Long is a board-certified orthopedic surgeon as well as one of the world's leading experts in the practice of yoga. He is a world-renowned author, lecturer, and blogger on the subject of yoga, particularly on the anatomical effects of various yoga poses. Illustrations prepared for him using trade secret processes are unique, identifiable to Plaintiffs, copyrighted, and recognized as authoritative throughout the world. Dr. Long

resides in Panama City Beach, FL.  He markets his works through his wholly owned corporation, Plaintiff Bandha LLC.  Facebook is a publicly traded corporation with its principal office in the State of California.

7.     Facebook is one of the largest social networking sites in the world, and allows its more than 1 billion individual and business users to create pages, upload, download, distribute, and buy and sell a variety of audiovisual works, including works that Plaintiffs advertise and market on Facebook.

8.     Tammy Dorset is the pseudonym for one or a group of computer hackers.  On information and belief, the actions of Defendant Tammy Dorset were taken in conspiracy with Defendants John Does 1-10.On information and belief, the Doe Defendants are a group comprised of multiple individuals operating from different locations at different times to violate Plaintiffs' intellectual property rights and thereby cause injury to Plaintiffs; the Doe Defendants acted through multiple IP addresses at various times, apparently from different locations

## INTRODUCTION AND THE FACTUAL BACKGROUND

9.     This case arises out of the criminal computer hacking, intentional copyright infringement by the Dorset Defendants who hacked

into a Facebook Business page owned by and controlled by the Dr Long, locked Dr. Long out of the administrative control of that page and over Dr. Long's strenuous objections posted Dr. Long's copyrighted material on that page with embedded links to malicious computer software and to pages displaying pornographic images.

10.    Under Article I, Section 8, clause 8, of the Constitution and the Copyright Act enacted by Congress thereunder, Dr. Long, like all owners has the ***exclusive right*** to control the distribution of his copyrighted material.  Dr. Long opposed the distribution of his copyrighted material by Dorset.  Since the copyrighted material was displayed on the Facebook site, Facebook had the obligation under law to remove material infringing on Dr. Long's copyrights in order for Facebook to avoid liability for copyright infringement.

11.    The competing interests of copyright owners and publishers/distributors of copyrighted material faced new challenges posed by the internet.   Congress sought to address those challenges by passing the Digital Millenium Copyright Act of _1998_____ (the "DMCA").  Copyright owners, faced the potential for infringing materials to become almost instantly distributed throughout the world.  As the Senate Report on the DMCA noted, "[d]ue to the ease with which digital works can be copied and

6

distributed worldwide virtually instantaneously, copyright owners will hesitate to make their works readily available on the Internet without reasonable assurance that they will be protected against massive piracy." S. Rep. No. 105-190, at 8.

12.     Facebook and other internet service providers ("ISPs"), like Facebook, do have control over what material is posted on their websites. But they faced the challenge of policing infringing material that might be posted on their web sites by third parties over whom Facebook had no control.  The major protection from copyright infringement liability the DMCA provided to internet service providers was to make clear that there is *no duty to become aware of infringing material on its web site*.   However, once an internet service provider *becomes actually aware of infringing material on its platform*, it may be liable under long established law for direct, vicarious or contributory infringement.

13.     Accordingly, the DMCA established a "safe harbor" for ISPs that protected them from liability under certain circumstances.   17 U.S.C. § 512 limits the liability of service providers, such as Facebook, for copyright infringement when the following conditions are met: (1) The provider does not have actual knowledge of the infringing activity; (2) if the provider has the right and ability to control the infringing activity, it must not receive a

financial benefit directly attributable to the infringing activity; and (3) upon receiving proper notification of the claimed infringement, the provider must expeditiously take down or block access to the material.

14.    The statute also establishes procedures for proper notification. Under the notice and takedown procedure, a copyright owner submits a notification to the service provider's designated agent, under penalty of perjury, including a list of specified elements. *If, upon receiving a proper notification, the service provider does not expeditiously* remove or block access to the material identified in the notification, the provider may be monetarily liable for the infringement.  The statute encourages the ISP to err on the side of removing material.  The ISP is shielded from any liability for improperly removing material.

15.    As we show further below, Facebook did not act expeditiously in taking down the infringing material posted by the Dorset Defendants on Facebook's web site.  Accordingly, Facebook is liable to Dr. Long for damages under the various theories of liability identified below.

### Dr. Long's Creation and Use of His Valuable Copyrighted Materials

16.    Plaintiff Dr. Long is an internationally renowned expert on yoga and in particular the anatomical purposes and effects of yoga poses. He is

one of the bestselling authors of yoga books, a frequent author of articles for yoga publications, a producer of video training materials and a frequent lecturer on yoga topics.

17.    Dr. Long has developed his yoga expertise and reputation over the course of more than 20 years.

18.    Dr. Long owns the copyrights to the internationally known brand Bandha Yoga directly or through Bandha LLC, which holds exclusive rights to its related publications, including books (in print and e-books), articles, pamphlets, videos, pictures, animations, and other interactive media.

19.    The infringing material in this case is in the form of illustrations and texts that come primarily from some of his copyrighted books:

(a) *The Key Poses of Yoga: Scientific Keys, Volume II* (U.S. Copyright Registration No. TX 7-473-344, effective January 11, 2012);

(b) *Yoga Mat Companion 1: Anatomy for Vinyasa Flow and Standing Poses* (U.S. Copyright Registration No. TX 7-474-337, effective January 11, 2012);

(c) *Yoga Mat Companion 2: Anatomy for Hip Openers and Forward Bends* (U.S. Copyright Registration No. TX 7-473-350, effective January 11, 2012);

9

(d) *Yoga Mat Companion 3: Anatomy for Backbends and Twists* (U.S. Copyright Registration No. TX 7-474-356, effective January 11, 2012); and

(e) *Yoga Mat Companion 4: Anatomy for Arm Balances and Inversions* (U.S. Copyright Registration No. TX 7-474-352, effective January 11, 2012).

20.     Among the Plaintiffs' copyrights and infringed intellectual property are anatomical illustrations showing the muscular/skeletal effect of various yoga poses, referred to as the "Scientific Keys to Unlock the Practice of Yoga" (the "Scientific Keys Illustrations").

21.     Some of the Scientific Keys Illustrations are digitally rendered, while others are hand-drawn. They are produced through trade secret means to ensure anatomical accuracy generally unobtainable through other means; the resulting images are unique, highly recognizable, sought after, and readily identifiable as the product of Dr. Long and his businesses.

22.     All of the Scientific Keys Illustrations are produced exclusively by or for Dr. Long under his direction. The digital Scientific Keys Illustrations are produced in collaboration with an employee. The employee—assistant's contract with Dr. Long grants Dr. Long exclusive intellectual property rights to all of the aforesaid collaborative illustrations.

23.   Dr. Long carefully manages the use of the Scientific Keys Illustrations to maximize their value for marketing his revenue-producing business.

24.   Among the Plaintiffs' copyrighted and infringed intellectual property is text, of which Dr. Long is the sole author and copyright holder.

25.   Dr. Long markets his intellectual property with a carefully designed and curated internet presence. In May of 2015, the Bandha Yoga page had approximately 400,000 followers on Facebook.

26.   Dr. Long's blog, Daily Bandha, has over seven million page views, and his YouTube videos have been viewed approximately 800,000 times.

27.   As with all owners of the copyrights, Plaintiffs possess the exclusive right to reproduce such copyrighted works in digital or print formats, to distribute such copyrighted works to the public by means of digital or other transmission, and to license those rights over the internet.

28.   As part of Plaintiffs' marketing plan, they established a business page on Facebook called "Bandha Yoga – The Scientific Keys" (the "Bandha Yoga page").

29.   Although the establishment of a business page is free, Facebook generates substantial revenue each year by encouraging businesses to

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH

establish a business page and then to advertise on Facebook to drive users to that page.

30.    Business page users may use their business page to advertise their products, upload and maintain information, and disseminate original content to users drawn to their business page.

31.    Facebook users who engage with Facebook business pages may view content uploaded by the business page administrator(s), interact with the business by "liking", commenting, and sharing the business page's posts, providing their own opinions and reviews, and sharing and disseminating opinions or advertising about such pages or products to their own network of Facebook connections.

32.    Business pages, including the Bandha Yoga page, have password-protected administrative access.

33.    Facebook makes special analytical tools available so that business page users can see how many times a post has been "liked," or how many times the post or page has been viewed (called "impressions"), or how many different individuals have viewed a post (called "reach"). Facebook business page users then can advertise through Facebook and can see analytics of the number of individuals who saw a post as a result of the advertisement (called "paid reach").

34.    Plaintiffs paid Facebook tens of thousands of dollars to advertise the Bandha Yoga Page and to otherwise use Facebook's services to expand the Bandha Yoga brand.  On information and belief, the users drawn to Facebook by the Bandha Yoga page provide Facebook with the ability to charge higher advertising rates to its advertisers.

35.    Paid Facebook business pages present unique risks of misappropriation of copyrighted materials and other misuse of data when those pages are hacked and the hackers assume administrative control of those pages.

36.    Facebook's Terms of Service, Section 1, entitled "Our Services," states that one of their services is to "[c]ombat harmful conduct and protect and support our community: We employ dedicated teams around the world and develop advanced technical systems to detect misuse of our Products, harmful conduct towards [sic] others, and situations where we may able to help support or protect our community. If we learn of content or conduct like this, we will take appropriate action – for example, offering help, removing content, blocking access to certain features, disabling an account, or contacting law enforcement. We share data with other Facebook Companies when we detect misuse or harmful conduct by someone using one of our Products."

37.    Facebook did not take appropriate precautions to prevent or curtail the misuse that occurred in this case and led to Plaintiffs' damages.

**The Hacking of the Bandha Yoga Page by the Dorset Defendants**

38.    The Dorset Defendants are computer hackers operating through fictitious addresses.

39.    Their criminal acts were accomplished by their unauthorized hijacking and unlawful control of the Bandha Yoga page, which they used to engage in the intentional, repeated, and unlawful misuse of Plaintiffs' copyright-protected intellectual property, including the Scientific Key Illustrations and text.

40.    When a user clicked on the copyrighted material, they would be redirected to a website that closely resembled Dr. Long's blog (created by further infringing his copyrighted materials) except that its margins were littered with pornographic advertisements; malicious malware would be installed on the user's device, or if they had certain antivirus protections, they would receive a warning that the website was attempting to install such malware.

41.    Each Dorset Defendant acted as a primary violator of the statutes in question and a primary tortfeasor in committing the torts in

question; alternatively, each Dorset Defendant acted in agreement and conspiracy with the primary violators and/or tortfeasors.

42.     On or about the Sunday of the Memorial Day Weekend, May 24, 2015, the Bandha Yoga page was accessed by an unauthorized user by the pseudonym Tammy Dorset; on information and belief, the actions of Defendants Tammy Dorset were taken in conspiracy with Defendants John Does 1-10.

43.     Tammy Dorset hacked the Bandha Yoga page and changed the administrative passwords and established himself/herself as the page administrator.  Tammy Dorset therefore prevented Dr. Long and his employees from accessing and controlling the Bandha Yoga page.

44.     On information and belief, Tammy Dorset was able to hack and control the Bandha Yoga page only because of an internal security lapse at Facebook.

**Dr. Long Notifies Facebook of the Dorset Defendants Posting of Material Infringing on Dr. Long's Copyright and Demands That Those Materials be Taken Down.**

45.     On May 24, 2015, Dr. Long notified Facebook through the Facebook online reporting form and a series of emails, using the email address to which the Bandha Yoga page was registered (rayalongmd@yahoo.com), that: (1) Dr. Long is/was the rightful owner of the

Bandha Yoga page, (2) that the Bandha Yoga page had been hacked, and (3) that copyright-infringing materials were being posted on the Bandha Yoga page by an unauthorized hacker. Dr. Long requested information from Facebook on how to proceed.

46.    On information and belief, a nonhuman robot responded on behalf of Facebook the same day, indicating in boilerplate language that Facebook had received his emails, was investigating the incident, and would contact Tammy Dorset.

47.    Facebook also instructed Dr. Long to lodge his infringement complaints at an email address established by Facebook to allow owners of intellectual property to inform Facebook of copyright infringement: ip@fb.com.  Following a link on that page, Dr. Long went to that page and filled out a form (the "IP Form") advising Facebook of the infringement, and further advising them that his complaint should be viewed as a "take down notice" under Section 512 of the DMCA.  The form did not have a place to identify which of the various sub-sections of Section 512 was sought to be invoked.  On information and belief, Facebook treated all such notices as potentially effective without that information.   As pointed further below, Dr. Long repeatedly filled out multiple Facebook IP Forms and received confirmations of filings in each instance.

48.    Multiple times on Memorial Day, Monday, May 25, 2015, Dr. Long notified Facebook via ip@fb.com and through Facebook's online reporting forms that the Bandha Yoga page had been hacked and that the unauthorized user was continuing to publicly disseminate Plaintiffs' copyrighted material.

49.    The subject line of the emails Dr. Long sent on May 25, 2015, was "copyright infringement"; the body of the email stated, "[t]his letter is official notification under Section 512(c) of the Digital Millennium Copyright Act (the "DMCA"), and I seek removal of the aforementioned infringing materials from your servers."

50.    The copyrighted materials appeared on Facebook in the form of links containing copyrighted illustrations and written text which purported to direct the user to Dr. Long's Bandha Yoga blog. Tammy Dorset placed these copyrighted materials on Dr. Long's business page in order to mislead visitors.  The images linked users to a site that installed malware on a user's computer.

51.    Multiple Facebook users commented on the Bandha Yoga page and on the infringing posts, warning other users that the Bandha Yoga page had been hacked, that the person in charge of the page was not the Bandha Yoga page's authorized administrator, and that clicking on the posted

17

images/text would result in installation of malicious malware. Tammy Dorset swiftly deleted all of these comments as they were posted.

52.   Dr. Long communicated with Facebook on May 25, 2015 using the email account that also serves as the email account of record for the Bandha Yoga page. In his communications, Dr. Long provided proof that he owned the copyrighted materials and the page, together with a notarized copy of his United States passport to prove that the notices were being sent by him.

53.   Dr. Long's notices to Facebook on May 25, 2015 and afterward fully complied, or, in the alternative substantially complied, with the requirements for a takedown notice under the DMCA.

54.   On Memorial Day, May 25, 2015 at 12:28 a.m., Facebook responded to Dr. Long with a message stating: "We reviewed the profile you reported pretending to be you and found that it doesn't violate our Community Standards."

55.   The most significant fact established by that message is the precise time at which Facebook had "reviewed" Dr. Long's DCMA take down notices.  By acknowledging receipt of his communications, Facebook acknowledged it was aware of the contents of Dr. Long's DMCA take down notices and his easily verified description of the hacking by the Dorset

Defendants and their takeover of administrative control of the Bandha Yoga Facebook page.

56.    Additionally, it is indisputable that the Dorset Defendants conduct did violate Facebook's Terms of Service.  Facebook's Terms of Service ("TOS") contain specific prohibitions including prohibitions on a)hosting content or taking any action on Facebook that infringes or violates someone else's right or otherwise violates the law ( TOS §5.1); b)accessing accounts belonging to others (TOS §3.4); c) using Facebook to do anything unlawful, misleading, malicious, or discriminatory (TOS §3.9); d) providing false information to Facebook or creating an account for anyone other than oneself without permission (TOS §4.1); and c)posting links to malware (TOS §3.4).60.  Facebook's conclusion that the account did not violate its own Community Standards was , not explained and is inexplicable.

57.    Facebook had actual knowledge from Dr. Long that the Bandha Yoga page had been hacked, that he had been impermissibly removed as administrator, and that his intellectual property was being infringed.

FACEBOOK COULD HAVE IDENTIFIED AND TAKEN DOWN ALL INFRINGING MATERIAL ON MAY 25, 2015.

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH

58.    On information and belief, Facebook's computers responsible for identifying and removing copyright infringing material operate 7 days a week, 24 hours a day.

59.    On information and belief, Facebook could have and should have taken down the material infringing Dr. Long's copyrights within a few hours of 12:28 a.m. May 25, 2015.or at the very latest the first thing at the start of Facebooks' business day on May 25, 2015.  The information that Plaintiffs have to support that allegation include:

a.  On information and belief, Facebook was easily and almost instantly able to identify all of the infringing material posted by the Dorset Defendants.  Facebook was aware from Dr. Long's DMCA notices that everything the Dorset Defendants posted on Dr. Long's Bandha Yoga Facebook page was copyrighted by Dr. Long and all that material infringed on Dr. Long's copyrights.  Unknown to Dr. Long, but known to Facebook, Facebook's computer system kept track of all of the material posted on one of their pages.  Indeed, software that allows identification of "new" material posted onto a web site after a specific date is commonly available and used by web site aggregators to "scrape" "new" materials from web sites and post those new materials on the aggregator's web site.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

b.  Therefore, on information and belief Facebook was able to use their programs to identify all of the materials posted to the Bandha Yoga Facebook page after the moment the Dorset Defendants assumed administrative control of the Bandha Yoga Facebook page.

c.  On information and belief, Facebook was easily and almost instantly able to remove all of the infringing material posted by the Dorset Defendants and effectively "roll back" the contents of the site to the condition it was in immediately prior to the assumption of administrative control by the Dorset Defendants.   That allegation is supported by the fact that on June 2, 2015, Facebook, or nine (9) days after receiving the DMCA take down notice and information that the hackers had used FB to engage in copyright infringement, removed Tammy Dorset as the administrator of the Bandha Yoga page, and effectively instantly removed all posts posted by Tammy Dorset, which also removed all of the infringing material that had been posted to the Bandha Yoga page.  Once Dr. Long was re-installed in administrative control, and the Dorset posted content had been removed, any remaining material on the Bandha Yoga Facebook page remained there with Dr. Long's consent.

d.  On information and belief, there was no technological reason nor any manpower limitation that interfered with the ability of Facebook to take

on May 25, 2015, the same actions it took over a week later on June 2, 2015. The only reason that Facebook did not act sooner is because Facebook acting through its computerized algorithms intentionally chose not to identify Dr. Long's complaints as a "take down" notice which by law required "expeditious" action, and instead treated the complaints as a "page administration" dispute which did not require "expeditious" action.

e.  In addition, even if, contrary to fact, Facebook did not have the ability to roll back the Bandha Yoga Facebook page, with each of his DCMA notices, Dr. Long had specifically identified the infringing images and supplied a link to his blog showing the "source" of the improperly copied infringing material.  Facebook did not require any human review of the pictures and text on the Bandha Yoga Facebook page to identify infringing materials. Neural network and Artificial intelligence software exists that allow computers to identify images and text and to determine potential infringement.  *See, https://www.cashmanip.com/neural-network-image-copyright* (last viewed 6/29/2021).  On information belief on May 25, 2015 Facebook had and used similar software to allow computer identification of infringing images or text.  The use of that software would have allowed identification and removal on May 25, 2015, of the images and text that the Dorset Defendants posted on the Bandha Yoga Facebook page.

22

f.  Reported cases, other publicly reported information, and Dr. Long's personal experiences show that other ISPs routinely remove infringing materials within hours, and certainly less than 24 hours after infringement.

g.  On information and belief, had Facebook chosen to remove the material infringing Dr. Long's copyrights on May 25, 205, it easily could have done so.

### Dr. Long's Repeated Attempts to Have Facebook Remove Infringing Materials Over the Next Eight Days.

60.    On May 25, 2015, Dr. Long sent additional DMCA takedown notices at 12:33 a.m. and 9:36 p.m.

61.    Facebook, through an apparent automated responder, provided Dr. Long with a form to report intellectual property infringement.  Dr. Long completed and submitted form on the same day. However, Facebook responded to Dr. Long by stating that it was a "page admin issue" and that Facebook was "unable to assist [him] with [his] request from this contact channel."

62.    Facebook's automated responder was apparently unable to recognize that the page administration issue and copyright infringement issue were inextricably intertwined: even if existing infringing material

were removed from the Bandha Yoga page, Tammy Dorset would continue to post new infringing material within the following hours as long as Tammy Dorset retained control of the page.

63.    Tammy Dorset posted new infringing material repeatedly throughout the nine (9) day time period (May 24, 2015 to June 2, 2015) that he/she/they controlled the Bandha Yoga page.

64.    A small sample of the Dr. Long's copyrighted material that was infringed can be found at the following URLs to Dr. Long's blog:

(a) http://www.dailybandha.com/2011/07/balancing-freedom-and-restraint-in-yoga.html

(b) http://www.dailybandha.com/2011/07/using-tfl-to-refine-utthita.html

(c) http://www.dailybandha.com/2011/05/shoulder-kinematics-in-yoga-part-ii.html

(d) http://www.dailybandha.com/2011/03/how-to-use-adductor-muscles-to-refine.html

(e) http://www.dailybandha.com/2011/04/shoulder-kinematics-in-yoga.html

65.    Despite this ongoing and continuous conduct, and despite Dr. Long's notifications, over the course of nine (9) days Facebook failed to

expeditiously remove or block access to the infringing material.  Facebook also failed to take reasonable action to terminate Tammy Dorset's control of the Bandha Yoga page.

### Dr. Long's Subsequent Notices to Facebook Eventually Lead to the Removal of Tammy Dorset as Page Administrator and Simultaneously to the Removal of the Infringing Material

66.    Facebook did not remove the infringing material after being made aware of the infringements by Dr. Long's DMCA-compliant notices; instead, the eventual removal of Tammy Dorset as page administrator removed the infringing material from the page itself.

67.    On May 26, 2015, the infringing material still appeared on the Bandha Yoga page and Tammy Dorset was still posting new infringing material, which would direct users to installation of malicious malware, almost hourly.

68.    On May 26, 2015, Dr. Long sent Facebook several additional DMCA takedown notices which stated that copyright-protected material was still being displayed and distributed on the hacked Bandha Yoga page.

69.    On May 26, 2015, Facebook's automated responder replied to Dr. Long, indicating that it believed that Dr. Long's copyright complaint was actually a page administration issue, and claimed to have forwarded his message to their page administration team.  Facebook's automated

responder therefore miscategorized Dr. Long's copyright issue as a page administration issue.

70.     Later in the day on May 26, 2015, Facebook responded with two messages (the "Evening May 26, 2015 messages") acknowledging that Dr. Long's previous messages concerned both intellectual property issues and page administration issues; Facebook asked which issue Dr. Long wanted to address first.

71.     One Evening May 26, 2015 message was signed "Flo" and the other was signed "Damian."

72.     On information and belief, neither a person named Flo nor a person named Damian personally reviewed Dr. Long's notices; those messages were generated and sent by Facebook's automated responders.

73.     If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been), on May 26 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

74.     On Tuesday, May 27, 2015 at 8:11 a.m., Dr. Long responded to Flo with a detailed explanation of the problem, and again sent DMCA takedown notices demanding that Facebook remove the infringing material,

underscoring the need for prompt action, reiterating that the hacker was linking Facebook posts containing Plaintiffs' copyrighted images and texts to destructive malware, and requesting that Facebook involve law enforcement.

75.   Facebook still did not remove the infringing material.  If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been), on May 26 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

76.   Because the Evening May 26, 2015 messages had been signed with human names ("Flo" and "Damian"), Dr. Long mistakenly but reasonably thought that his communications were being addressed by humans, and he became increasingly frustrated that Facebook did not appear to understand his messages.

77.   On Tuesday, May 27, 2015 at 9:52 a.m., Dr. Long sent another DMCA takedown notice to the general Facebook intellectual property address, copying "Flo" and "Damian" and "Wyatt" on the email.

78.   On May 27, 2015 at 1:39 p.m., a message from Facebook, signed by "Lulu", inquired how Tammy Dorset got access to the page, to which Dr.

Long responded that he did not know Tammy Dorset and sent a notarized declaration that he was the owner of the Bandha Yoga page. Both "Lulu" and "Flo" then ceased communicating with Dr. Long, although Dr. Long copied them on all of his subsequent emails.

79. Although it had proper DMCA take down information for over three (3) "internet business days," on information and belief, Facebook made no efforts to remove, nor stop the continued posting of, the infringing material.

80. If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been), on May 27 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

81. On May 28, 2015, Dr. Long sent additional DMCA notices to Facebook by its online reporting form, email and fax. "If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been), on May 28 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

82.    On May 29, 2015, or five (5) "internet business days" after Facebook received proper DMCA take down notices,the Bandha Yoga page remained under Tammy Dorset's control and he/she/they continued the infringing activities by posting new infringing material on an hourly basis.

83.    Rather, on May 29, 2015, Facebook replied to Dr. Long's continued takedown notices with yet another series of emails.

84.    "Damian," who appeared to be an automated responder, responded in the same boilerplate manner that "Flo" had responded days earlier, indicating that despite receiving multiple DMCA takedown notices from Dr. Long, Facebook still erroneously believed that Dr. Long was attempting to make a page administration claim, and that Facebook could not act on the infringement claim if Dr. Long wanted to complain about the hacking of the Bandha Yoga page.

85.    On May 29, 2015, Dr. Long responded to "Damian," stating: "I'm definitely making an intellectual property claim. That is why I have sent multiple DMCA notices."

86.    Dr. Long also repeated that the hacker was using Plaintiffs' copyrighted images and text to entice his business contacts and prospective business contacts to click on the links, which would then redirect the user to installation of harmful malware.

87.    If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been), on May 29 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

88.    On May 30, 2015, or six (6) "internet business days" after the initial and fully proper DMCA take-down notices, Dr. Long provided still more DMCA notices to Facebook.  "If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been) on May 30 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

89.    On June 1, 2015, or seven (7) "internet business days after the initial DMCA take-down notices, Facebook responded that it was seeking further details and requested that Dr. Long resubmit his previous DMCA notices, which included links to the infringing material, which Dr. Long had done on his previous DMCA notices. "If Facebook treated Dr. Long's infringement complaint as a matter requiring "expeditious" action, which on information and belief it did not, if not done sooner (as it should have been)

on June 1 Facebook could have and would have taken down all posts on the Bandha Yoga Facebook page posted by the Dorset Defendants."

90.     On June 2, 2015, eight (8) "internet business" days after the hacking first occurred, Facebook removed Tammy Dorset as the administrator of the Bandha Yoga page, and removed all posts posted by Tammy Dorset, which also removed all of the infringing material that had been posted to the Bandha Yoga page over the previous eight days.

91.     The infringing material was removed eight (8) "internet business days" after Dr. Long started issuing his series of takedown notices.

92.     On information and belief, that action was taken based on Facebook's procedures for dealing with page administration complaints, and not because of reported copyright infringement.  .

93.     Facebook also failed to timely restore Dr. Long's administrative control over the Bandha Yoga page, which would have allowed Dr. Long to promptly remove the offending content himself.

94.     During the period where the Dorset Defendants controlled the Bandha Yoga page, over 3.5 million existing and/or prospective clients of Dr. Long and/or Bandha Yoga accessed the improperly posted infringing materials and were exposed to malware, or, if their computer was protected

by antivirus software, to warnings that the page was attempting to damage their device with malware.

95.    The hacking by the Dorset Defendants and Facebook's failure to act expeditiously to return control of the Bandha Yoga page to Dr. Long and to remove the infringing materials, severely undermined Plaintiffs' relationships with existing and prospective customers.

**Facebook's Wrongful Handling of Plaintiffs' Copyright Infringement Notices**

96.    At all relevant times, Facebook had actual knowledge that Tammy Dorset had displaced Dr. Long as the Bandha Yoga page administrator without his authorization and in violation of Facebook's Terms of Service.

97.    At all relevant times, Facebook had actual knowledge that the Bandha Yoga page had been established by Dr. Long and administered by Dr. Long.

98.    At all relevant times, Facebook was engaged in a transactional business relationship with Plaintiffs, by virtue of Plaintiffs paying Facebook in exchange for Facebook's targeted promotion and advertising of the Bandha Yoga page to Facebook users.

99.   This transactional business relationship imbues Facebook with a duty of care with respect to business pages, to maintain adequate internal cyber security systems and mechanisms to prevent unauthorized access and copyright infringements, or, alternatively, to expeditiously stop unauthorized access and restore proper page administration, and to expeditiously remove copyright-infringing material.

100.   Facebook breached its aforesaid duty of care to Plaintiffs.

101.   Facebook failed to maintain adequate internal cyber security systems and mechanisms to prevent unauthorized access and copyright infringements, in that a security breach at Facebook directly and proximately caused the Dorset Defendants to gain unauthorized access to the Bandha Yoga page and to post dozens of copyright-infringing images and texts.

102.   Facebook failed to expeditiously stop the Dorset Defendants' unauthorized access and restore proper page administration, in that Dr. Long followed Facebook's own internal guidelines to notify Facebook of the hacking and copyright infringements several dozen times and Facebook failed to stop the unauthorized access and restore proper page administration for eight days, all of which were "business days," as the internet is "open" 24/7, 365 days a year.

103.   104. In addition to following Facebook's internal reporting procedures, Dr. Long diligently notified Facebook of the hacking and copyright infringements dozens of times through every avenue he could think of: through email, facsimile, and FedEx overnight mail, with and without notarized proof of his identity and ownership of the Bandha Yoga page.

104.   During the eight days that he was locked out of the Bandha Yoga page, a business page for which he pays for targeted promotion and advertising, Dr. Long was repeatedly directed to non-human automated responders, which he believed to be human, and otherwise effectively ignored by employees at Facebook who could have properly recognized the problems and expeditiously solved them.

105.   But for Facebook's failure to maintain adequate internal cyber security systems and mechanisms to prevent and rectify unauthorized access and copyright infringements, Plaintiffs' existing and prospective business relationships would not have been damaged.

## AS AND FOR A FIRST CLAIM FOR RELIEF[1]

---

[1] While the Court's order only allows amendment of certain Causes of Action, Plaintiffs respectfully have preserved all previously pleaded Causes of Action so as to avoid waiver and permit Plaintiffs to argue that such Causes of Action should be preserved, either before this Court, or before the Ninth Circuit or if necessary on a Petition for a Writ of Certiorari before the United States Supreme Court.

## Copyright Infringement, Against All Defendants

106.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

107.   Defendants have infringed Dr. Long's copyrights in the Bandha Yoga page by reproducing and distributing the copyrighted words without authorization, in violation of the Copyright Act, 17 U.S.C. §§ 106 and 501.

108.    Defendants' acts of infringement were willful and in disregard of, and/or with indifference to, Plaintiffs' rights.

109.   As a direct and proximate cause of Defendants' infringements, Plaintiffs are entitled to damages in an amount to be proven at trial and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.

110.   Alternatively, Plaintiffs are entitled to the maximum statutory damages of $150,000 per copyright infringement, or in such other amount as may be proper under 17 U.S.C. §504(c), in an amount to be proven at trial. Plaintiffs are thusly entitled because Defendants' infringements were willful and continued.

111.   Plaintiffs are further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### Contributory Copyright Infringement, Against All Defendants

112.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

113.   Defendants have infringed Plaintiffs' copyrights in the Bandha Yoga materials, including Dr. Long's exclusive rights of reproduction, adaptation, and distribution by means of digital distribution through Facebook, in violation of 17 U.S.C. §§ 106 and 501.

114.   On information and belief, because the Bandha Yoga Page was hacked, an authorized user or users disseminated Plaintiffs' copyrighted material tainted with the hackers' malware, exposing millions of users to both the aforesaid infringing content and malware.

115.   The Dorset Defendants have each knowingly and materially contributed to unauthorized reproductions, adaptations, and distribution of the copyrighted works by unauthorized users, and have each contributed to, or caused, the infringement of Plaintiff's copyrights.

116.   Facebook knowingly and materially contributed to unauthorized reproductions, adaptations, and distribution of the copyrighted works by unauthorized users, have contributed to, or caused, the infringement of Plaintiff's copyrights.

117.  All Defendants' acts of infringement were willful, in disregard of, and with indifference to, Plaintiffs' rights.

118.  As a direct and proximate result of the infringements by Defendants, Plaintiffs are entitled to damages in an amount to be proven at trial and to Defendants' profits in amount to be proven at trial, which are not currently ascertainable.

119.  Alternatively, Plaintiffs are entitled to the maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be property under 17 U.S.C. §504(c), in an amount to be proven at trial. Plaintiffs are thusly entitled because Defendants' acts of infringement were willful.

120.  Plaintiffs are further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. §505.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
<u>**Vicarious Copyright Infringement, Against All Defendants**</u>

121.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein .

122.  The Dorset Defendants have infringed Plaintiffs' copyrights in the Bandha Yoga materials, including reproduction, adaptation, and distribution of such infringing materials.

123.   Facebook's failure to act to prevent continued infringement after receiving notice of the direct infringement by the Dorset Defendants, and Facebook's continued reproduction, adaptation, and distribution of the infringing materials on its servers violate Plaintiffs' exclusive rights of reproduction, adaptation, and distribution by means of digital distribution through Facebook, violated 17 U.S.C. §§ 106 and 501.

124.   All Defendants have knowingly and materially contributed to unauthorized reproductions, adaptations, and distribution of the copyrighted works; Facebook so contributed to the infringement of Plaintiffs' copyrights by failing and refusing to expeditiously limit, prevent, remove, or curtail such infringing activity despite Dr. Long's repeated notices.

125.   Facebook refused or was unable to timely restore administrative access to Dr. Long after his repeated notices of the hacking, thereby interfering with Plaintiffs' ability to take necessary measures to remove the infringing material.

126.   On information and belief, the Dorset Defendants derived a direct financial benefit from this infringement, including, but not limited to, advertising, other revenue, or other financial benefits from the increased user traffic arising from the "draw" of Plaintiffs' copyrighted materials.

127.  The Defendants' acts of infringement were willful and in disregard of, and with indifference to, Plaintiffs' rights.

128.  As a direct and proximate result of the infringements by the Dorset Defendants, Plaintiffs are entitled to damages in an amount to be proven at trial and to Defendants' profits in amounts to be proven at trial, which are not currently ascertainable.

129.  Alternatively, Plaintiffs are entitled to the maximum statutory damages of $150,000 for each copyright infringed, or in such other amount as may be proper under 17 U.S.C. §504(c), in an amount to be proven at trial. Plaintiffs are thusly entitled because Defendants' acts of infringement were willful and continued.

130.  Plaintiffs are further entitled to attorneys' fees and full costs pursuant to 17 U.S.C. §505.

## AS AND FOR A FOURTH CLAIM FOR RELIEF Violation of the Computer Fraud and Abuse Act (CFAA), Against the Dorset Defendants

131.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein Paragraphs 1 – X are hereby realleged.

132.  The Dorset Defendants knowingly caused the transmission of a program, information, code, or command, and as a result of such conduct,

intentionally caused damage without authorization to one or more protected computers in violation of 18 U.S.C. §1030(a)(4).

133.  At all relevant times, the Facebook servers hosting the Bandha Yoga Page were protected computers pursuant to 18 U.S.C. §1030(e)(2)(B).

134.  Beginning on or about May 24, 2015, and ending on or about June 3, 2015, the Dorset Defendants intentionally accessed the Facebook server(s) hosting the Bandha Yoga Page without authorization, or exceeding authorized access, and thereby obtained information in violation of 18 U.S.C. §1030(a)(2).

135.  In violation of 18 U.S.C. §1030(a)(4), the Dorset Defendants obtained the aforesaid access knowingly, with intent to defraud; by means of such conduct, they furthered the intended fraud by obtaining things of value, including access to Plaintiffs' existing and prospective customers, the use of Plaintiffs' copyrighted materials, and other value, in amounts to be proven at trial.

136.  As a result of the acts of the Dorset Defendants, Plaintiffs have suffered damages in excess of $5,000 within a one-year period, and on information and belief, damages were caused to 10 or more protected computers.

137.  As a direct and proximate result of the Dorset Defendants' wrongful conduct, Plaintiffs have suffered losses, including: the cost of responding to the offense; conducting a damage assessment; restoring the data, program, system, or information to its condition prior to the offense; revenue losses; costs incurred; and other consequential damages incurred due to interruption of service.

138.  Plaintiffs are entitled to economic damages pursuant to 18 U.S.C. §1030(g) in amounts to be proven at trial.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
### Violation of the Stored Communications Act (SCA), Against the Dorset Defendants

139.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein .

140.  Pursuant to 18 U.S.C. §2701(a), with certain exceptions not relevant here, it is unlawful to (1) intentionally access without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceed an authorization to access that facility; and thereby obtain, alter, or prevent authorized access to a wire or electronic communication while it is in electronic storage in such system.

141.  During the eight-day time frame in which Dr. Long was locked out of the Bandha Yoga page, the Dorset Defendants (1) continuously and

intentionally accessed the Bandha Yoga page, (2) continuously accessed and removed comments made by users of the Bandha Yoga page which would alert visitors to the fact that the page had been hacked, that the person in charge of the page was not the Bandha Yoga page's authorized administrator, Dr. Long, and that downloading images would result in the installation of malware against the user's wishes.

142.  During the eight-day time frame in which Dr. Long was locked out of the Bandha Yoga page, the Dorset Defendants continuously and intentionally obtained, and deleted or altered, electronic communications stored on the Bandha Yoga page and prevented authorized access by Dr. Long to electronic communications on that page.

143.  The violations of the SCA by the Dorset Defendants were committed with a knowing and intentional state of mind.

144.  As a result of the foregoing, pursuant to 18 U.S.C. §2707, Plaintiffs are entitled to the actual damages suffered by the Plaintiffs and any profits made by the Dorset Defendants as a result of the violation, in amounts to be proven at trial, in addition to reasonable costs and attorneys' fees, and punitive damages against the Dorset Defendants.

145.  In no case are Plaintiffs entitled to less than $1,000 for each such violation, the costs of the action, and reasonable attorneys' fees.

1

2

## AS AND FOR A SIXTH CLAIM FOR RELIEF

## <u>Violation of California Penal Code § 502, Against the Dorset Defendants</u>

3

4

146.   Plaintiffs repeat and re-allege each and every allegation in the

5

foregoing paragraphs as if fully alleged herein.

6

7

147.   In violation of California Penal Code §502(c), the Dorset

8

Defendants:

9

10

(1)   Knowingly access and without permission altered,

11

damaged, deleted, destroyed, and otherwise used data, computer,

12

computer system, or computer network, in order to either (A)

13

14

devise or execute any scheme or artifice to defraud, deceive, or

15

extort, or (B) wrongfully control or obtain money, property, or

16

data;

17

18

(2)   Knowingly and without permission used or caused to be

19

used computer services;

20

21

(3)   Knowingly accessed and without permission added, altered,

22

damages, deleted, and destroyed data which resides or exists

23

24

internal or external to a computer, computer system, or computer

25

network;

26

(4)   Knowingly and without permission disrupted or caused the

27

28

disruption of computer services or denied or caused the denial of

computer services to an authorized user of a computer, computer

system, or computer network;

(5)    Knowingly introduced a computer contaminant into

computers, computer systems, or computer networks;

(6)    Knowingly and without permission used the internet

domain name or profile of another individual, corporation, or

entity in connection with the sending of one or more electronic

mail messages or posts and thereby damaged or case damage to a

computer, computer data, computer system, or computer

network;

(7)    Knowingly and without permission accessed or cased to be

accessed any computer, computer system, or computer network.

148.   As a result of the foregoing, Plaintiffs have suffered losses

including the cost of responding to the offense, restoring the data, program,

system, or information to its condition prior to the offense, revenue lost, cost

incurred, and other consequential damages incurred because of interruption

of service.

149.   Plaintiffs are entitled to damages pursuant to CA Penal Code

§502(e) in amounts to be proven at trial.

150.  Plaintiffs are entitled to punitive damages against the Dorset Defendants because the Dorset Defendants have been guilty of oppression, fraud, or malice, as defined in CA Civil Code §3294(c).

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
### Tortious Interference with Contractual Advantage, Against the Dorset Defendants

151.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

152.  Plaintiffs had valuable existing business relationships with many of the persons who visited the Bandha Yoga page during the period when the Dorset Defendants hijacked and controlled the Bandha Yoga page.

153.  On information and belief, the Dorset Defendants were aware that those relationships existed, intended to disturb them, and did disturb Plaintiffs' then-existing relationships with some of those persons, which caused damage to Plaintiffs.

154.  As a result of the foregoing, Plaintiffs are entitled to damages in amounts to be proven at trial.

## AS AND FOR AN EIGHTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Advantage, Against the Dorset Defendants

45

155.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

156.   Plaintiffs had valuable potential business relationships with many of the persons who visited the Bandha Yoga page during the period when the Dorset Defendants hijacked and controlled the Bandha Yoga page.

157.   On information and belief, the Dorset Defendants were aware of those prospective relationships, intended to disturb them, and did disturb Plaintiffs' then-existing relationships with some of those persons by using unlawful and otherwise improper means, causing damage to Plaintiffs.

158.   As a result of the foregoing, Plaintiffs are entitled to damages in amounts to be proven at trial that are not currently ascertainable.

### AS AND FOR A NINTH CLAIM FOR RELIEF
### Conversion, Against the Dorset Defendants

159.   Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

160.   Plaintiffs had valuable property rights in the Bandha Yoga page and in Plaintiffs' intellectual property.

161.   The Dorset Defendants used and disposed of Plaintiff's property in a manner inconsistent with Plaintiffs' property rights.

162.  As a result of the foregoing, Plaintiffs are entitled to damages in amounts to be proven at trial that are not currently ascertainable.

## AS AND FOR A TENTH CLAIM FOR RELIEF
### Civil Conspiracy, Against the Dorset Defendants

163.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

164.  The Dorset Defendants formed and operated the conspiracy to commit copyright infringement and conversion; to violate the CFAA, the SCA, California Penal Code §502; and to tortuously interfere with Plaintiffs' contractual and prospective advantages.

165.  The Dorset Defendants engaged in wrongful conduct in furtherance of the conspiracy.

166.  Plaintiffs have suffered damages arising from the Dorset Defendants' wrongful conduct.

167.  As a result of the foregoing, Plaintiffs are entitled to damages in amounts to be proven at trial that are not currently ascertainable.

## AS AND FOR AN ELEVENTH CLAIM FOR RELIEF
### Negligence, Against Facebook

168.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

169.  Facebook owes a duty of care to business pages that engage in a transactional business relationship with Facebook by virtue of paying Facebook for targeted advertising to users. Facebook's duty of care includes maintaining adequate internal cyber security systems and mechanisms to prevent hackers from obtaining control of Facebook business pages, or, alternatively, to expeditiously stop unauthorized access and restore proper page administration, and to expeditiously remove copyright-infringing material.

170.  Facebook breached its duty of care with respect to Plaintiffs by enabling the Dorset Defendants to access the Bandha Yoga page without Dr. Long's authorization, by failing to maintain properly programed automated responders that can identify complaint categories and refer them to the appropriate departments, and by failing to expeditiously restore proper page administration and remove infringing material by taking eight days to do so, despite dozens of notices from Dr. Long.

171.  Plaintiffs' existing and prospective business relationships and professional reputations have been irreparably harmed by association of the Bandha Yoga page with malicious malware, to which approximately 3.5 million individual Facebook users may have been exposed.

172.  As a direct and proximate result of Facebook's negligence, Plaintiffs are entitled to damages in an amount to be proven at trial that are not currently ascertainable.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF Aiding and Abetting, Against Facebook

173.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein .

174.  Knowingly, or with willful blindness, Facebook substantially assisted the Dorset Defendants in committing the common law torts alleged against the Dorset Defendants, through their inaction.

175.  As a result of the foregoing, Facebook is jointly and severally liable for damages caused by those torts, to the same extent as the Dorset Defendants.

## AS AND FOR A THIRTEENTH CLAIM FOR RELIEF Breach of Contract, Against Facebook

176.  Plaintiffs repeat and re-allege each and every allegation in the foregoing paragraphs as if fully alleged herein.

177.  Plaintiffs and Facebook entered into a contract wherein Plaintiffs paid Facebook for targeted promotion and advertising of the Bandha Yoga page. Facebook was obligated to comply with its own TOS, including the provision in Section 1, entitled "Our Services," which provides that they

employ dedicated teams about the world and develop advanced technical systems to detect misuse of their products, harmful conduct toward others, and situations where they may be able to help support to protect their community. The TOS provide that, if Facebook learns of content or conduct like this, they will take appropriate action, such as offering help, removing content, blocking access to certain features, disabling accounts, or contacting law enforcement.

178.  Plaintiffs paid Facebook the agreed-upon fee, complying with their obligation under the contract.

179.  Facebook failed to abide by its TOS. They had actual knowledge of conduct entailing misuse of their products that was harmful to Plaintiffs, but Facebook's eventual corrective actions were rendered inappropriate by the ineffective automatic responders, failure to correctly direct Dr. Long's complaints, failure to correctly identify the wrongful conduct, failure to expeditiously remove or block access to infringing materials, and failure to promptly restore Dr. Long as the Bandha Yoga page's administrator.

180.  Plaintiffs were harmed and Facebook's breach of contract was a substantial factor in causing said harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

181.   As to FIRST, SECOND AND THIRD CLAIMS FOR RELIEF, against all Defendants, for damages in an amount to be proven at trial and Defendants' profits in amounts to be proven at trial, which are not currently ascertainable. Alternatively, for statutory damages of $150,000 per copyright infringes or in such other amount as may be proper under 17 U.S.C. 504(c), an amount to be proven at trial, and in either event for costs and reasonable attorneys' fees of this action;

182.   As to the FOURTH CLAIM FOR RELIEF, against the Dorset Defendants, economic damages pursuant to the CFAA, in amounts to be proven at trial.

183.   As to the FIFTH CLAIM FOR RELIEF, against the Dorset Defendants, actual damages suffered by Plaintiffs pursuant to the SCA, in amounts to be proven at trial, and reasonable costs, attorneys' fees, and punitive damages.

184.   As to the SIXTH CLAIM FOR RELIEF, against the Dorset Defendants, for damages suffered by Plaintiffs in amounts to be proven at trial, reasonable costs and attorneys' fees, and punitive damages.

185.  As to the SEVENTH, EIGTH, NINTH and TENTH CLAIMS FOR RELIEF, against the Dorset Defendants, for damages suffered by Plaintiffs in amounts to be proven at trial, and reasonable costs and attorneys' fees.

186.  As to  the ELEVENTH, TWELFTH AND THIRTEENTH CLAIMS FOR RELIEF, against Facebook, for damages in amounts to be proven at trial.

187.  Against all Defendants, for pre-judgment interest, costs, and for such other and further relief as this Court deems just and appropriate.

Dated: New York, N.Y.
      July 1, 2021

Respectfully Submitted,
FOLKENFLIK & MCGERITY LLP
By:   /s/ Max Folkenflik
      MAX FOLKENFLIK
      (*substituting Counsel*)
      1500 Broadway
      New York, New York 10036
      (212) 757-0400
      Email: mfolkenflik@fmlaw.net

COBURN AND GREENBAUM, PLLC
By:   /s/ Barry Coburn
      BARRY COBURN
      (*withdrawing Counsel*)
      1710 Rhode Island Ave., NW
      Second floor
      Washington, D.C. 20036
      Telephone: (202) 643-9472
      Fax (toll-free): (866) 561-9712
      Email: barry@coburngreenbaum.com

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH

ROSS LIBENSON (SBN 181912)
LIBENSON LAW
1939 Harrison Street, Suite 917
Oakland, CA 94612
Telephone: (510) 451-4441
Email:Ross@LibensonLaw.com,
(State Bar No. 181912)
*Attorneys for the Plaintiffs.*

SECOND AMENDED COMPLAINT
LONG V. DORSET 17-cv-02758-PJH